# CHITTENDEN COUNTY.

[Continued from *ante*, page 85.]

## ALLEN R. LOOMIS *v.* EDWARD WAINWRIGHT.

The defendant purchased of the plaintiff a horse, at an agreed price, and delivered to him, in part payment, two promissory notes, signed by one D., payable in specific articles, but then appearing upon their face to be overdue, and the plaintiff agreed to receive the notes at his own risk, so far as the responsibility of D. was concerned. But the defendant had previously agreed with D., in writing, for a sufficient consideration, to extend the time of payment of these notes for a period which had not elapsed, when they were transferred to the plaintiff, of which agreement the plaintiff was not informed at the time of the sale. The plaintiff, upon giving notice to D. of the transfer of the notes, was informed by D. of the existence of this agreement, and immediately, and within a reasonable time after the sale, offered to rescind the entire contract with the defendant,—which offer was declined. When the time, for which the payment of the notes was extended, elapsed, D. was insolvent. *Held*, that the plaintiff was entitled to recover against the defendant the amount of the two notes.

And it was also held, that, inasmuch as the notes were received in part payment for property *sold*, the contract not being one of exchange, and the plaintiff had been induced, by the deceit of the other party, to accept that in part payment, which proved to be no such payment as he had a right to expect, he might renounce the contract so far, and recover, in an action on book account, for the property sold, as if no such payment had been attempted.

A contract in writing between a debtor and certain of his creditors, by which the creditors agree to extend the time of payment of their debts for a specified period, and which does not profess to include all the creditors of the debtor, nor to include creditors in any other right than that imported by the signatures, will operate as a temporary bar to suits by the creditors who become parties to it, although it be not signed by all the creditors.*

---

* See *Bank of Bellows Falls* v. *Deming et al.*, 17 Vt. 366 ; *Kingsbury* v. *Deming et al.*, Ib. 367, n.; *Foster* v. *Deming et al.*, 19 Vt. 313.

And the validity of such contract will not be affected by the fact, that one creditor, who had an individual claim against the debtor, and who was also a member of a firm, to which the debtor·was indebted, consented, that the firm might become parties to the contract, if he could receive security for his individual claim, and that the debtor furnished such security, in the absence of any evidence, that the other creditors were encouraged to expect, that such creditor's individual claim would be included within the contract.

The discontinuance, by the debtor, of proceedings instituted by him, in the district court of the United States, to be declared a bankrupt, under the Act of Congress of 1841, is a sufficient consideration for such contract.

If a creditor, whose debt is evidenced by a promissory note executed by the debtor, become a party to such contract, and subsequently, and after his note has become overdue, but before the extended time of payment has expired, transfer the note by indorsement, the temporary bar, created by the contract, will attach to the note in the hands of the indorsee.

When property is transferred at a fixed price agreed upon, and money and other property received in payment, it will, in the absence of express evidence, that an exchange only was intended, be deemed a sale, rather than an exchange,—an agreed price being essential to a proper bargain, or sale, but altogether needless in the case of a mere exchange.

It is a general rule, that if one party will avail himself of a right to rescind a contract, he must rescind it entirely, and not as to a part only. But in case of a sale, the proper application of the rule is to the property sold, when that consists of several particulars; and if the seller have been induced, through imposition effected by the other party, to accept that in part payment, which proves to be no such payment as he had a right to expect, he is permitted to renounce it so far, and prosecute his claim for the property sold, as if no such payment had been attempted.

In order to entitle the vendor of property to recover for it on book account, it is not essential, that he should, at the time of making the sale, have contemplated making the charge for the property, or even that he should have supposed, that he was entitled to make it, provided the facts then existing, but of which he was not apprised, gave him the right to claim a balance as unpaid for the property.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported the facts substantially as follows.

The only account presented by the plaintiff was for a horse, charged at fifty dollars. In January, 1846, one Hiram C. Sessions, who was the agent of the defendant in the business of selling his

66

property and buying horses and collecting debts for him, purchased of the plaintiff, at Colchester in the county of Chittenden, the horse in question, at the price of fifty dollars, and delivered to the plaintiff, in payment therefor, three promissory notes and eighty six cents in money,—one of said notes signed by Gustavus A. Deming, for $25,87, dated September 13, 1842, and made payable to E. & A. A. Wainwright in February, 1844, in grain,—another signed by said Deming, for $10,00, dated September 13, 1842, and made payable to E. & A. A. Wainwright in grain in February, 1843,—and the third note signed by Oliver Janes, for $6,00, dated January 14, 1846, and payable to Hiram C. Sessions in one year. The three notes, with the interest then due upon them, and the money paid, amounted to $50,00, the price of the horse. The horse was immediately taken by Sessions to Middlebury, where the defendant resided, and delivered to the defendant, who accepted the horse and ratified the contract made by Sessions. At the time the plaintiff received the notes, Sessions told him, that he knew nothing about the responsibility of Deming, and that the plaintiff must take them at his own risk in that respect; and the plaintiff did so receive the notes. On the same day the plaintiff notified Deming, that the two notes had been assigned to him, and requested Deming to pay them; whereupon Deming informed the plaintiff, that the defendant had executed an agreement in writing, by which he was restrained from collecting the notes, or commencing any suit upon them, for three years from the fifth day of May, 1843. This agreement was annexed by the auditor to his report, and marked " C," and was in these words,—".Burlington May 5, 1843. Whereas Gustavus A. 'Deming, of Milton, in the county of Chittenden, has commenced ' proceedings in bankruptcy in his favor, and the same are now ' pending for discharge and certificate on the eleventh day of July, ' 1843 ; now, in consideration that he discontinues said proceedings, ' and does not procure said discharge and certificate, we his cred- ' itors hereby agree to wait on him, for the amount our due, for ' three years from this day ; and we will not collect, sue, or attempt ' to collect, sue, or make said .Deming cost, during said three ' years." To this contract the defendant signed the firm name of " E. & A. A. Wainwright,"—he being at the time a member of that firm ; and it was also signed by all the persons, and firms, who

were creditors of Deming at the time, except one Elijah Herrick, to whom Deming then owed $12,50. Herrick was, however, a member of the firm of " R. Sanderson & Co.," and assented to the contract being signed by that firm, on condition that Deming would secure the payment of his private debt against him ; and Deming accordingly did so. Previous to the execution of this contract, Deming had filed his petition in the district court of the United States for the district of Vermont to be decreed a bankrupt under the Act of Congress of 1841, which petition was pending in said court on the fifth day of May, 1843, and was subsequently discontinued by Deming. The two notes against Deming, which were transferred by Sessions to the plaintiff in part payment for the horse in question, constituted the debt due from Deming to E. & A. A. Wainwright, at the time this contract was executed by that firm. On the same day that the plaintiff received the notes from Sessions, and after he had demanded payment from Deming, the plaintiff went to the place in Colchester, where he had traded with Sessions, with a view of rescinding the trade, or of obtaining from Sessions other payment for the horse, in lieu of the two notes against Deming,— but Sessions had then left for Middlebury; but within a few days the plaintiff again saw Sessions at Colchester, and informed him, that the collection of the two notes against Deming was restrained by the contract above set forth, and offered the two notes to Sessions and requested other pay for the horse in lieu of them, and also offered to return the three notes and the eighty six cents in money, and requested Sessions to return the horse ;—but Sessions told him, that he knew nothing about it, and that Wainwright might do as he pleased respecting the matter. The auditor reported, that the note against Janes was good, and that the plaintiff was willing to receive and apply it, so far, in payment for the horse ; and that the plaintiff brought into court, before him, the notes against Deming, to be received by the plaintiff, if he would do so; and the auditor returned the three notes to the county court, with his report. From December, 1845, to March, 1846, Deming had attachable property exceeding the amount of these two notes ; but after the first of May, 1846, he was possessed of no attachable property, and no part of the notes was at any time paid. Previous to the contract between Sessions and the plaintiff, and about the time Sessions was going to

Colchester, the two notes were delivered to him by one Carpenter, a clerk of the defendant at Middlebury, to collect, in accordance with his usual custom, but without any special direction from the defendant; and neither Carpenter, nor Sessions, had then any knowledge of the contract above set forth, marked "C," nor did Sessions know of the existence of that contract, at the time he delivered the notes to the plaintiff. It did not appear, that the defendant knew, that the notes against Deming had been delivered to the plaintiff, until after Sessions had returned to Middlebury with the horse. The auditor found, that the horse was worth $50,00, at the time he was sold by the plaintiff to Sessions, and reported, that if, upon these facts, the plaintiff was entitled to recover in this form of action, there was due to him a balance of $47,02, after deducting from the price of the horse the amount of the note against Janes and the eighty six cents paid in money.

The county court, September Term, 1847,—Bennett, J., presiding,—accepted the report and rendered judgment thereon in favor of the plaintiff, for the balance found due by the auditor. Exceptions by defendant.

*Smalley & Phelps* for defendant.

I. The agreement between Deming and his creditors was not binding upon the plaintiff, and did not preclude him from sueing the notes at any time.

1. The agreement is general, not specifying these notes, nor restraining the firm of E. & A. A. Wainwright from negotiating them in the usual course of business. And that no fraud existed in the transfer is manifest from the fact, that the defendant did not know, that these notes were sent out, or that the trade was made, until after it took place, and that the agent, who made the bargain, did not know of the existence of the agreement. Being so negotiated, clearly the agreement could not be binding upon a holder, taking them in the usual course of business, without being a party to or having notice of this contract. *Young* v. *Covell*, 8 Johns. 25. *Gallager* v. *Brunel*, 6 Cow. 350. 9 Wend. 9. *Shepherd* v. *Worthing*, 1 Aik. 193. *Cornfoot* v. *Fowke*, 6 M. & W. 358.

2. The agreement is void, from the fact that one of the creditors received the full amount of one debt, as a consideration for signing

Loomis *v.* Wainwright.

the agreement as to another. *Jackson* v. *Duchaire*, 3 T. R. 551. *Knight* v. *Hunt*, 15 E. C. L. 489.

3. It does not appear, that the plaintiff has sustained any real injury.

II. But if the plaintiff have a remedy against the defendant, it must be either by an action for damages for the fraud, or upon an implied warranty, that the notes were due, as they purported,—and for the obvious reason, that the measure of the plaintiff's recovery must be the difference between the value of the notes, as affected by the agreement, and their value, had the agreement not existed. As the plaintiff took the notes at his own risk as to the responsibility of the signer, if they would have been worthless, if not restrained by the agreement, he has sustained no loss by its existence; and on the other hand, if they are good, notwithstanding the agreement, he has sustained no loss. It is by no means certain, that the notes could have been collected, if not restrained, nor that they are worthless, as it is. They cannot therefore be treated like a counterfeit bank bill, which should be cash, and is nothing.

If there were fraud, the plaintiff might rescind the contract and sue in trover for his property, or affirm it, and sue for his damages; but even then he could not affirm the contract as to the sale and part of the consideration and sue on book for the value of the remainder,—especially as the contract was in reality one of exchange, and not one of sale.

*H. B. Smith* and *A. Peck* for plaintiff.

1. The facts reported show a sale of the horse at a specified price; and it is clear, that an action on book lies to recover the price, if it have not been paid.

2. The facts do not show payment. Although the plaintiff agreed to take the notes in payment, yet he was not bound to keep them as such, as they were not what he contracted for, nor what they purported to be, when he received them. The contract, entered into by Wainwright and the other creditors with Deming, extended the time of payment, and this fact was concealed from the plaintiff. If the contract had been executory, clearly the plaintiff would not have been bound to accept them; and, having accepted them in ignorance of the fact, that they were incumbered by the contract, he

Loomis v. Wainwright.

had a right to return them, whether the defendant were guilty of fraud, or not. The contract not only extended the time of payment of the notes, but the note for $25,87, payable in grain, which had not become due at the date of the agreement, thereby became payable in grain at the end of the three years; whereas at the date of the sale it purported to be payable in money, as the time of payment, by the terms of the note, had then expired.

3. The concealment of the fact, that the notes were not what they purported to be, is such a legal fraud, as absolves the plaintiff from all obligation to treat them as payment. The plaintiff being in fact deceived, it is no answer, to say that the agent did not know of the fact concealed, and that the principal did not know, that the agent concealed it. The act of the agent is the act of the principal, and the knowledge of the principal is the knowledge of the agent. The two are identified, and, for this purpose, must be treated as one person. *Mayhew et al.* v. *Eames et al.*, 10 E. C. L. 195. The opinion of Ld. ABINGER, in *Cornfoot* v. *Fowke*, 6 M. & W. 358, is sound law, and is fully adopted by the court of Queen's Bench, in *Fuller* v. *Wilson*, 43 E. C. L. 629; and although this case was reversed in the Exchequer Chamber, it was upon another ground, which has no bearing on the case at bar.

If the defendant were not, on the making of the contract, so far guilty of a fraud, as to be liable in an action for deceit, yet a mutual mistake will warrant a party in rescinding a contract. The defendant, having affirmed the contract of the agent, has thereby subjected himself to all the consequences attendant upon such contract, as if made by him in person, and stands in the condition of a principal enforcing the contract of his agent, procured by a false representation, made by the assent and procurement of the principal.

The opinion of the court was delivered by

ROYCE, Ch. J. This case is defended on two principal grounds; —1. That the plaintiff has not shown himself entitled to any redress, as against the defendant,—and 2. That he cannot be redressed by this form of action.

We consider, that the positions assumed in support of the first ground of defence are not tenable. The contract shown by the paper marked " C " did not profess to include all the creditors of

Deming, nor to include creditors in any other right, than that imported by the signatures. We think, the signature of R. Sanderson & Co. affected Herrick only as a member of that firm, and that ⌐no fraud upon the other signers should be inferred from the simple fact, that he required security for his individual claim against Deming. Perhaps it might be otherwise, had he and Deming denied to the other signers the existence of the claim, or encouraged them to expect, that it would be treated as if embraced within the contract. There was evidently a sufficient consideration for the contract, to render it binding as a temporary bar to suits by the creditors, who became parties to it. Among these were the two Wainwrights, who then held the notes against Deming, which were afterwards transferred to the plaintiff. At the time of the transfer the notes had apparently been long overdue, and were therefore subject, in the plantiff's hands, to any defence, affecting their validity and operation, which would have been available as against the Wainwrights. And we think, the temporary bar then in force against the Wainwrights should be regarded as a defence of that character; for otherwise the contract of the creditors might become illusory and fruitless to the debtor, as the benefit, for which he stipulated, could at any time be defeated by assigning the demands. It follows, that when the plaintiff received those notes in part payment for the horse, they were not, as they purported and as he believed, in a state to be immediately enforced by suit. He was deceived to his manifest injury, and the deception was legally imputable to the defendant. The alleged grounds of decision in *Cornfoot* v. *Fowke*, 6 M. & W. 358, do not conflict with this result, if, indeed, that case can be deemed in any material respect analogous to the present. It appears, that the plaintiff seasonably offered to rescind the entire contract, but the offer was declined. Under these circumstances he must have been entitled to a remedy in some form against the defendant.

It remains to be determined, whether the action of book account can be sustained upon the facts reported. As one ground of objection, it is claimed, that there was an exchange of the horse for the three notes and the eighty six cents, rather than a sale, in the correct sense of that term. But the auditor expressly finds a sale, and none of the facts reported are inconsistent with that finding.

Indeed, in the absence of express evidence that an exchange only was intended, a sale might justly be inferred from the fact, that the trade was governed by a fixed price for the horse; an agreed price being essential to a proper bargain, or sale, but altogether needless in the case of a mere exchange. There the commodities exchanged, whatever be their supposed value, are mutually received as equivalents for each other. It must be taken, then, that the horse was sold to the defendant at the price of fifty dollars. And for the price of such property sold and delivered it cannot be now questioned, that the action on book account may generally be supported. *Kingsland* v. *Adams*, 10 Vt. 201.

Again, it is urged, that the plaintiff could not repudiate the Deming notes, unless he would avoid the whole contract; and that his remedy was upon the defendant's implied warranty, that the notes were what they purported to be, or else in case as for deceit. It is certainly a general rule of law, that if one party will avail himself of a right to rescind a contract, he must rescind it entirely, and not as to a part only. *Fay* v. *Oliver*, 20 Vt. 118. But in case of a sale, the proper application of the rule is to the property sold, when that consists of several particulars. The contract cannot thus be rescinded as to part of the property and left in force as to the residue. Such an alteration would be tantamount to making a new contract, and would require the concurrent assent of both parties. I am not aware, that the rule has ever been applied in the manner now claimed. But if the seller have been induced, through imposition effected by the other party, to accept that in payment, which proves to be no such payment as he had a right to expect, he is permitted to renounce it, and prosecute his claim for the property sold, as if no such payment had been attempted. Nor is it any objection to such a course, that a remedy might be sought upon some liability of the party in fault, growing out of the transaction. For whether such a remedy would sound in tort, or contract, the party deceived and injured is not bound to resort to it. *Gilman* v. *Peck*, 11 Vt. 516, and authorities there referred to.

The remaining objection is, that there was no intention to create an indebtedness, nor any right to make the charge on book at the time of the sale. But the plaintiff need not then have contemplated making the charge, nor even have supposed, that he was entitled to

make it, provided the facts then existing, but of which he was not apprised, gave him the right to claim a balance as unpaid for the horse. It appears, that although for a few hours he thought he had received his whole pay, yet in truth he was not bound to consider himself paid. According to the justice and good sense of the case, therefore, his repudiation of the two notes against Deming should have relation to the sale and delivery of the horse, and avoid their effect, as payment, from the beginning. This would show a balance never paid, and a consequent right to charge the property on book. In the case of *Nason* v. *Crocker*, 11 Vt. 463, it was not claimed, that any deception had been practiced, or that either party acted under misapprehension or mistake. The contract of the parties was therefore to have effect precisely as they had made and executed it. On that ground the case is obviously distinguishable from the present.

The result is, that in our opinion the plaintiff was entitled to sustain his action, and that the judgment of the county court should be affirmed.