E. B. Bond and S. Green *v.* Jonathan B. Clark.

*Warranty.    False Representations.    Sale.    Evidence.*

A simple affirmation is not a warranty, unless it was so intended and understood by the parties; and whether such was the intent and understanding is a question of fact.

In the case of a written contract of sale, containing no warranty, parol evidence is inadmissible to prove a warranty in connection with the sale.

The mere fact that a vendor made fraudulent representations respecting the article sold, and that the purchaser relied thereon, is not sufficient to sustain an action on the case against the vendor for such false representations. It must also appear that the vendor knew they were false.

Case for the breach of a warranty in the sale of a patent right for "S. P. Francisco's celebrated Atmospheric Butter Churn," and also for false representations in making such sale. The action was referred, and the referees reported as follows :

"We find that previous to July 10th, 1854, the defendant was the owner of a patent right, known as S. P. Francisco's Atmospheric Butter Churn ; that about this time the plaintiffs entered into a negotiation with the defendant for the purchase of an interest in such patent in and for the county of Orange, in this state, and that in such negotiation between the parties, the defendant made extravagant representations of the superiority of this churn to all others in use ; that it was a valuable and useful invention ; that it was in great demand, and was fast coming into general use. These representations were made verbally, as well as by a printed circular, in the following words :

'100 Dollars Reward !—Will be paid for the production of a churn superior to S. F. Francisco's celebrated Atmospheric Butter Churn, which, from its peculiar build and simple construction, makes a very cheap and durable machine, obviating all objections to complicated and expensive churns. This scientific churn has not an equal for making and gathering butter, in quality or time, as we can make hard and sweet butter in one-eighth of the time usually spent in churning. The patentee and his agent are in possession of medals, premiums, and certificates, received at the different state and county fairs, mechanical

37

Bond et al. *v.* Clark.

institutions, &c., sufficient to satisfy all in regard to the charac-
ter of this churn, which for durability, convenience, economy
and practical utility, cannot be surpassed, and we defy the world
for an equal. This purely scientific, labor-saving machine has
been examined by most of our scientific and practical dairy-men,
who all admit that in this churn is all that is required. This
churn received the first premium at the recent New York state
fair, held at Saratoga. Also, at the last Rutland County fair.
We would therefore invite all persons interested in improvements
to call and examine this churn.

And as there is money to be made by manufacturing, selling
and using the above churn, we invite the attention of all, and
especially those wishing to enlist in a profitable business. The
undersigned having purchased the right of the state of Vermont,
are prepared to sell county or town rights, on favorable terms.
Communications should be addressed to

JOHATHAN B. CLARK, Danby, Vt.
GEORGE WILLARD, Pawlet.

The churn and the proprietors can be seen, for a few days,
at ———.'

We further find that prior to the purchase of this right from
the defendant, neither of the plaintiffs had seen, or were permit-
ted to see, the operations of this churn, except upon water, and
that the plaintiffs, relying upon the aforesaid representations of
the defendant, on the 10th day of July, 1854, did purchase of
the defendant the right to make, use and vend the said churns in
Orange county, and took a conveyance therefor from the defen-
dant, and paid him therefor on the day of said conveyance the
sum of three hundred dollars. This conveyance contained no
warranty, nor any representations in regard to the value or
excellence of the churn, or the patent right.

We further find that all the aforesaid representations of the
defendant to the plaintiffs, as to the qualities and utility of said
churn, were untrue and false, and that it was not in great demand
and coming into general use, and that the same was and is of no
value.

We further find that after the plaintiffs found that the said
patent was of no value, they ceased all efforts to sell and dis-

Bond et al. *v.* Clark.

pose of the same, but soon thereafter made known to the defendant that they had been deceived by him about the said patent, and offered to re-convey the whole right to him, and requested him, the said defendant, to pay back to them, the said plaintiffs, the money they had so paid to him for said right, but the defendant declined to take a re-conveyance, or to pay back the money as requested.

If from the foregoing facts the plaintiffs are entitled to recover, we find for the plaintiffs to recover of the defendant three hundred dollars and the interest from the 10th day of July 1854, to the 10th day of September, 1860. But if the plaintiffs are not entitled to recover, then we find for the defendant to recover his costs."

Upon this report the county court, at the March Term, 1862, PECK, J., presiding, *pro forma* rendered a judgment for the plaintiffs, for the sum named in the report, to which the defendant excepted.

*J. B. Bromley* and *E. Edgerton*, for the defendant.

*Spencer Green* and *E. N. Briggs*, for the plaintiffs.

PECK, J. The question principally discussed in this case is, whether, upon the facts reported by the referees, the plaintiffs are entitled to recover. It appears by the report, in connection with the written assignment or transfer from the defendant to the plaintiffs, that on the 19th June, 1849, letters patent were granted to Samuel P. Francisco for certain improvements in atmospheric churns; that at the time of the sale in question the defendant owned the right under that patent for the state of Vermont; that on the tenth day of July, 1854, the defendant sold his right for the county of Orange, and made a written transfer of it to the plaintiffs, by an instrument, a copy of which is annexed to the report. No question is made as to the validity of the patent, or as to the defendant's title. The referees find that at the time of the sale in the negotiation, "the defendant made extravagant representations of the superiority of this churn to all others in use, that it was a valuable and useful

invention, that it was in great demand, and fast coming into general use;" that these representations were made verbally, as well as by a printed circular, annexed to the report. On looking at this circular we find various representations of the comparative excellencies of this churn, and its superiority over all others; some of which are of rather a general character. Perhaps the most prominent and pointed among these representations, found to be untrue, is the one in these words: " This scientific churn has not an equal for making and gathering butter in quality or time, as we can make hard and sweet butter in one-eighth of the time usually spent in churning." There is also a representation as to its having taken the premium at various agricultural fairs, which for aught that appears was true. The referees find that all the representations as to the qualities and utility of the churn were false, and that it was not in great demand and coming into general use, and that the same is and was of no value; that prior to the purchase, " neither of the plaintiffs had seen, or were permitted to see the operation of the churn, except upon water," and that the plaintiffs made the purchase relying on the representations of the defendant. No warranty by the defendant appears, unless such is the necessary legal effect of the representations. It is claimed by the plaintiffs' counsel that such is the legal effect. But a simple affirmation is not a warranty, unless it is so intended and understood by the parties, and whether such was the intent and understanding is a fact to be found by the triers of the facts. Where an affirmation is so found to have been mutually understood by the buyer and seller as a warranty, it is a part of the contract, a binding engagement, which obliges the seller to make it good, whether he did or did not know that it was untrue. But if not understood at the time by the parties as a warranty, it is no part of the contract, although it may have been one of the inducements that influenced the purchaser to enter into the contract. In such case the seller is not liable merely from the fact that the representation is false, as in case of a warranty he would be, but it must also be shown that the seller knew it to be false. The sense in which the affirmation is understood by the parties is therefore very material to their rights, as on that, in the

Bond et al, *v.* Clark.

absence of fraud, depends the liability of the seller, when the representation turns out to have been untrue. Before the court can pronounce a simple affirmation a warranty, it must be found by the triers of fact that it was so understood by the parties. This principle was recognized in *Beeman* v. *Buck*, 3 Vt. 53, and expressly so decided in *Foster* v. *The Estate of Cadwell*, 18 Vt. 176. In that case the proof was that at the time of the sale the seller was enquired of by the plaintiff if the sheep were sound and free from the foot rot, and he replied, "they are sound and free from the foot rot." There was nothing in the case in any way qualifying this explicit representation. The county court charged the juiy that if they found the representation as the witness testified, it would amount to a warranty. The supreme court reversed the judgment, on the ground that the representation was not in legal effect a warranty; and held that it should have been left to the jury to find whether the parties mutually understood it as a warranty, and also held that unless the jury so found, it was not a warranty, and would not make the defendant liable, unless he knew at the time of the sale that the representation was false.

*Jones* v. *Bright*, 5 Bing. 533, (15 Eng. Com. L. 529,) is cited by the plaintiffs' counsel to show that the representations in this case amount to a warranty, or that a warranty is implied. That case, as to some of the principles therein laid down, has been questioned in subsequent cases. But that case differs from this, and is not an authority to the extent claimed. In that case the plaintiff applied to the defendant, and informed him he was in want of some copper to sheathe a vessel, and the defendant replied, "I will supply you well." The copper was not then examined, selected, or delivered, nor does it appear that the plaintiff saw it. It was afterwards taken by the plaintiff's ship-builder. The contract was an executory contract, and not a sale on inspection at the time of the alleged warranty. Besides, the declaration alleged, and so was the proof, that the defendant was a manufacturer of the article. Some of the court held that there was an express warranty, but the case turned mainly on the distinction between a mere seller, and a manufacturer of an article, who sells his own manufacture, the court holding that

in case of the latter there was an implied warranty that the article manufactured and sold by him was fit for the use for which he knew it was purchased. The case at bar is not the case of the sale of an article manufactured by the seller, it is the sale of a right to manufacture an article under a patent. Nor is the seller the patentee ; he sells a right which he has purchased. It is impossible to put the case at bar upon the ground of an express warranty.

In addition to the reasons already given, the contract is in writing, containing no warranty, and the written contract excludes parol proof of a warranty. If any authority need be referred to for this proposition, *Reed* v. *Wood,* 9 Vt. 285, is a strong case illustrative of the principle. In that case it was decided that a common bill of sale excluded parol proof of a warranty. That was the sale of some hides in a package, lashed together with a rope. The proof was that the seller would not allow the package to be opened, but represented it to be a lot of good hides, and that the purchaser, upon being assured they were good, concluded to take them ; and that the hides, on being opened afterwards, turned out to have been so injured at the time of sale as to be worthless. The court held that the bill of sale excluded the parol evidence to prove a warranty, and said that the evidence had no tendency to show fraud or deceit.

For both reasons the plaintiff can not recover in this case upon the ground of a warranty, *first,* because the facts reported do not amount in law to a warranty, and *secondly,* because it is not competent to add a warranty by parol evidence to the written contract.

2. The action can not be sustained on the ground of fraud. There is no finding by the referees that the defendant knew that his representations were false. For aught that appears the defendant made the representations in good faith, believing them to be true. It is urged that the report finds that the plaintiffs relied on the representations, supposing them to be true. This is necessary in all cases, in order to sustain an action for fraudulent representations ; but it is not enough ; it must also appear that the seller knew the representations to be false. It is insisted

Bond et al. *v.* Clark.

that the statement in the report that " neither of the plaintiffs had seen, or were permitted to see, the operation of the churn, except upon water," is sufficient to show fraud. It is true that if the defendant used any art or contrivance to prevent the plaintiffs from testing the truth of the defendant's representations, it would tend to show fraud, as it would tend to show that he knew his affirmations were false. But even if we could infer from this statement of the referees that the defendant resorted to some means to prevent the plaintiffs from further testing the churn, it would be but evidence of fraud, but by no means conclusive ; and if the referees could not find the *scienter* with all the evidence and circumstances before them, it would be dangerous for the court to infer it from this naked general statement. It is not so strong evidence of fraud as existed in *Reed* v. *Wood,* above referred to, in which it appeared the seller refused to have the package of hides opened ; and in that case the court say the evidence had no tendency to show fraud. In this case it is enough to say that what is found by the referees is not sufficient to constitute fraud in law, or to warrant the court in inferring fraud.

As the case shows neither a warranty nor fraud in the sale, the judgment of the county court is reversed, and judgment rendered for the defendant.