## IMPERIAL PORTRAIT COMPANY *v.* BRYAN.

1. A sale of goods by sample carries an implied warranty that the bulk of the goods purchased will correspond with the sample; but in order to constitute such a sale, something more must appear than that at the time of the sale a sample was exhibited, viz., that when the exhibition was made it was mutually understood and intended that the sample was a reliable representative of the bulk of the goods purchased.
2. When in such a case the contract is expressed in a writing embracing the entire agreement, and the same contains no reference to a sample, "it is clear that conformity of the bulk to the sample is not an agreed term."
3. The evidence in this case failed to show a sale by sample.

Submitted May 17, — Decided June 7, 1900.

Certiorari.    Before J. B. Park, judge pro hac vice.    Greene superior court.    August term, 1899.

*J. P. Brown*, for plaintiff.    *S. H. Sibley*, for defendant.

LITTLE, J.    The plaintiff instituted an action in a justice's court, to recover a judgment against Bryan for a bill of goods amounting to $17.75.    The defendant pleaded that goods similar to those named in the account attached to the summons were shipped to him, but they wholly failed to come up to samples and were immediately rejected by defendant and returned to plaintiff.    The jury returned a verdict for the defendant. The plaintiff presented a petition for certiorari, which was sanctioned, and on the hearing was overruled, and the plaintiff excepted.    The order for the goods was as follows:

"Imperial Portrait Co., Chicago, Ill.    Please ship the undersigned, at your earliest convenience, the following goods at 30 days, net cash, from date of shipment.

1 Crayon and Ink Portraits S. S. size 16 x 20..a $1.25    $ 1.25
1 Watercolor Tint       "     " ·     "    " $1.25   $ 1.25
Extra faces in portrait extra......................a    .50
Full figure............................................    .75
12 Frames (Assorted Styles) size 16 x 20 ......a $1.25   $15.00

| | 2 | | | | 2 | | | | | | 2 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |
| 16 | 20 | 28 | 32 | 33 | 44 | 45 | 46 | 70 | 71 | 73 | 74 | 77 | | | | | |
| | | 2 | | | 2 | 2 | | | | | | | | | | | |
| 35 | 36 | 78 | 79 | 80 | 92 | 93 | 72 | | | | | | | | | | |

500 Hand-bill with business card.................⎫
500 $10.00 Punch-cards, with frames at $3.15. ⎪
100 Circular-letters (Black) ........................ ⎬ Free.
  3 Show-cards....................................... ⎪
  1 Punches      a 50 cts....................... ⎭
          Total .. ......................................$17.50
"Terms:   On Frames......................... 30 days net cash.
On Portraits (after 1st order) 10 days net cash.

"Notice.   The Imperial Portrait Co. agrees to furnish guaranteed portraits, as ordered, for each of above frames at regular prices as shown by above.   The two sample portraits in this order may be exchanged at any time for other portraits.   By shipping goods released the freight charges will be but one half the usual rates, but the consignee assumes all risk of damage while in transit.

"Guarantee.   Portraits to be correct copy of small picture, and when not satisfactory to owner are to be taken out of frame and returned for correction, and then if not satisfactory to be credited at full price.   There is no other agreement except what is written or printed hereon.

  "Please ship as above directed.     [Signed] R. F. Bryan.

  "Salesman, E. M. Prithett.    Post-office, Union Point, Ga.

  "Order No. 127.   Shipping point, Union Point, Ga.

  "Dated at Union Point, Ga., Dec. 8, 1896."

It was also shown for plaintiff that the goods were shipped from Chicago, December 23, 1896, consigned to the defendant at Union Point, Ga.   The defendant testified, in his own behalf, that a salesman exhibited frames, and he made selection and signed contract.   Frames did not come up to samples; were in-

ferior in workmanship and finish ; knew them to be unsalable, and returned them. The salesman who made the contract carried a small leather case, and the samples consisted of varied colored sections and corners of picture-frame molding; he carried no whole frames. Witness understood when he bought that it was from samples, though it was not put in the contract. It was also shown that the defendant reshipped the picture-frames to the plaintiff in error on 27th of March, 1897, and that it required from 8 to 10 days for goods to reach Union Point, shipped from Chicago, and the same length of time for the return, except in busy seasons, when it required a longer time. A letter from the defendant was also introduced, giving as a reason why the draft for the goods was not paid, that the parties through their salesman offered to place goods with only one man in town, but broke the contract — hence the goods were returned. Other evidence was introduced, to which reference is not necessary. The sole question in the case is, whether the presiding judge erred in overruling the certiorari. In our opinion he did. Giving to the testimony of the defendant its full weight, it fails to establish the fact that he bought the goods by sample.

The implied warranty which arises from a sale of goods by sample is, that the quality of the bulk is equal to that of the sample. Mr. Benjamin in his Treatise on Sales, § 649 (7th (Bennett's) ed.), says, on authority, that "It must not be assumed that in all cases where a sample is exhibited, the sale is a sale 'by sample.' The vendor may show a sample but decline to sell by it, or the buyer may decline to trust to the sample and the implied warranty." A number of cases are cited to support the text. Mr. Tiedeman in his work on Sales, § 188, citing a number of authorities, says: "In order that the implied warranty of correspondence of the bulk with the sample may be claimed, it must be a veritable sale by sample. It is not sufficient that the sample is exhibited. It must be exhibited with the intention and understanding of the parties that the seller assures the buyer that the sample is a reliable representative of what the bulk of the goods is. If the facts of the case do not support the presumption that the seller intended to warrant the correspondence of the bulk with the sample, the mere production of the sample will not raise the implication of the warranty." To the

the same effect see Burdick on the Law of Sales of Personal Property, 95; Newmark on the Law of Sales, § 334. It will be noted that the defendant himself, in giving an account of the purchase, said: "Salesman exhibited frame, I made selection and signed contract." Besides, the contract for the purchase of the goods was in writing, and it plainly appears by it that the defendant ordered 12 frames of assorted styles of a particular measurement. There was no reference in this order, which contains certain terms of contract, that these frames were purchased by sample. There was no reference of any character from which it could be determined that the order was otherwise than a purchase of certain frames therein described, and among the conditions embraced in this order is one declaring that "There is no other agreement except what is written or printed hereon." This order constituted a contract to purchase. It gave the number, the size and the style of the frames intended to be purchased. It contained a guarantee as to the portraits which were to accompany the frames. It gave the prices and terms of payment, and purported on its face to be the full and entire contract. Treating of sales by sample, Mr. Burdick further says: "If the contract has been committed to writing, and no reference is made to a sample, it is clear that conformity of the bulk to the sample is not an agreed term." We are of the opinion, therefore, that the evidence of the defendant was of itself not sufficient to show that the sale of the goods was made by sample, and that the court erred in overruling the certiorari.

*Judgment reversed. All concurring, except Fish, J., absent.*