AETNA CHEMICAL COMPANY *v.* SPAULDING & KIMBALL COMPANY.

May Term, 1924.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1924.

*Principal and Agent—Limitation of Agent's Authority on Order Blank—Parol Evidence Inadmissible to Show Terms of Written Contract Purporting to State Whole Contract —Contract of Sale—Parol Evidence Inadmissible to Show Sale by Sample, Where Written Order Stating Whole Contract Does Not Mention Sample—Uniform Sales Act—Decisions of Highest Courts of Other States Interpreting Act as Precedents—Construction of Section 15 of Uniform Sales Act—Effect of Notice of Agent's Limited Authority—Sales —Right of Examination of Goods to Determine Whether in Conformity with Contract—Resale as An Acceptance of Goods—Worthlessness of Goods as Ground for Rescission— Burden of Proof—Harmless Error—Rescission Must Be in Toto—Right of Foreign Corporation, Unauthorized to Do Business in Vermont, to Maintain Action for Goods Shipped in Interstate Commerce.*

1. The provision, plainly printed on the face of an order blank, "No promises valid unless written in this order," was a limitation by seller upon its salesman's authority, and a part of the contract of which buyer will be presumed to have had knowledge at the time the order was given, and, as it was a condition going to the essence of the salesman's authority, any agreement or representation made by him, not written in such order, is void as to the seller.

2. The principles under which parol evidence is admissible, where contract is only partially reduced to writing, have no application to an order blank having plainly printed on its face, "No promise valid unless written in this order," such a writing not being of a partial character, but purporting on its face to state the whole contract.

3. A printed order blank as filled out in writing, and signed by the buyer, by its treasurer, and by the seller, by its salesman, *held*, either in express terms or by legal intent, to contain all the essential elements of a valid contract of sale.

4. Where a written order for goods states the whole contract between the parties, and makes no mention of sale by sample, parol evidence is not admissible to show that the goods were sold by sample, as such a showing would be to add to the contract a further and independent condition amounting in legal effect to a warranty that the goods should correspond with the sample in quality.

5. In view of the requirement of Uniform Sales Act (Acts 1921, No. 171, § 74) that it shall be given an interpretation and construction to effectuate its general purpose of making uniform the laws of the states which shall enact it, decisions of the highest courts in other states having such enactment, involving its interpretation and construction, are of more than persuasive authority, and constitute precedents which are generally binding in this State, where similar questions are presented.

6. Section 15 of Uniform Sales Act is to be construed as if subdivision 4 of such section stood as a proviso engrafted upon subdivision 1 thereof, so that a contract to sell or sale of a specified article under its patent or trade name carries with it no implied warranty as to its fitness for any particular purpose, whether the buyer makes known to the seller the particular purpose for which the goods are required or not.

7. The extent to which, and the manner in which, a principal shall authorize his agent to act are matters completely within his determination, and a person dealing with such agent, having notice of the limited powers delegated to him, must stand the consequences if the agent transcends them.

8. When goods are delivered to a buyer without previous examination, even though there be no warranty, either express or implied, as to the quality of or fitness of the goods for any

particular purpose, under Uniform Sales Act, § 47, the buyer is entitled to a reasonable opportunity of examining them to ascertain whether they are in conformity with the contract.

9. When goods were delivered to a buyer which put them in its warehouse, treating them like other merchandise in stock, and sold, reshipped, and charged to its customers a large quantity of such goods, extending over a period of nearly a month, such acts, being inconsistent with continued ownership of the seller, constituted acceptance of goods under Uniform Sales Act, § 48.

10. Worthlessness of goods for the purpose for which the buyer bought them is not alone sufficient to show want of consideration justifying rescission, but they must also be shown to be worthless to the seller.

11. Buyer, claiming worthlessness of goods constituting lack of consideration and justifying rescission, has burden of proving their worthlessness.

12. Exclusion of evidence offered by buyer that the substance purchased as a window washer was entirely useless for any purpose, and of no value, was harmless, where the witness further testified that he could not say about its value as a glass cleaner, and had never tested it himself.

13. Even though right of rescission exists, a party cannot rescind a contract and yet retain a portion of the consideration, but must rescind the contract *in toto*, hence where goods were purchased on two orders and so intermingled as to be indistinguishable, and part of them sold, buyer's offer, in attempting to rescind the second order only, to return the goods in its possession and pay for those used was insufficient, as only goods received on that order could be returned in its rescission, and it was further necessary to offer to return to the seller what buyer had received in sale of goods from that order.

14. Although a contract for the sale of goods was made in Vermont by a corporation unauthorized to do business in this State under G. L. 4995 by reason of having failed to obtain a certificate of authority therefor, where the goods were to be shipped to the buyer's place of business in this State from New York, and were so shipped, the seller to pay the freight, the shipment was in interstate commerce, and seller had a right, under the Federal Constitution, to maintain an action

for the purchase price, which could not be taken away by any state statute, hence the provisions of G. L. 5009, denying corporations unauthorized to do business in Vermont the right to maintain action on a contract made in this State, are inapplicable.

ACTION OF CONTRACT to recover for goods sold and delivered after Uniform Sales Act became effective. Plea, general denial, and special pleas, and declaration in set-off. Trial by jury at the September Term, 1923, Chittenden County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Martin S. Vilas* and *Guy M. Page* for the defendant.

*Max L. Powell* for the plaintiff.

WATSON, C. J. This is an action of contract to recover for goods both sold and delivered after the Uniform Sales Act took effect. Defendant pleaded general denial, payment, set-off with declaration and specification, and special plea alleging failure of consideration and non-performance of the contract by plaintiff. At the close of the evidence a verdict was directed for plaintiff to recover its claim amounting to $542.18, with costs. The case is here on defendant's exceptions.

Defendant, a corporation, is engaged in the wholesale mercantile business at Burlington, selling goods to the trade, its customers being local retail dealers of the same kinds of goods.

The goods were ordered on one of plaintiff's printed order blanks, filled out in writing, and signed by the defendant as buyer and by J. W. Nicholson as plaintiff's salesman. Defendant's name was signed thereto by Fred E. Kimball, its treasurer. When the latter so signed the order, he understood he was thereby giving an order to the plaintiff company, and read its name printed thereon at the top. The goods so ordered were all shipped by that company and received by defendant. Reading down from the top, the order gives the plaintiff's name and place of business, the number of the order, its date (February 8, 1922), the defendant's name and address, the goods ordered as 60 cartons, each of 4 dozen "Wonder Window Washer (Small)," price $1.90 per dozen, and 15 cartons, each of 2½

dozen same kind of goods ."(Large)," price $3.04 per dozen. "12½% trade, 3% 10 days, delivered." Then follows directly underneath, and just above the defendant's name signed to the order, the plainly printed provision, "No promises valid unless written on this order." Such elements of agency are not provided for in the Uniform Sales Act, and therefore the rules of law relating to principal and agent apply to the contract in question. Uniform Sales Act, § 73.

The original order on such printed blank, so filled out and signed, was received in evidence as Plaintiff's Exhibit No. 1, to show the contract existing between the plaintiff and the defendant, subject to the latter's objections: that it does not purport to be a contract, nor indicate the nature of the undertaking; nor whether a contract of sale, or who the seller or buyer is; nor anything as to a promise to pay, or the subject-matter of the contract, and is not a complete contract, but simply a memorandum of certain entries of quantity and price of some substance, apparently having no connection with the plaintiff as a party.

[1] The exception to this ruling presents two all-important questions, namely, the character and the legal effect of the document received in evidence. The clause therein, "No promises valid unless written on this order," was a limitation by the plaintiff upon the authority of its salesman, and, being printed on the face of the order, it was a part of the contract of which defendant had knowledge, or will be taken to have had knowledge, at the time the order was given, and defendant as well as the salesman was bound thereby. The limiting provision did not purport to circumscribe the agent's authority as to the terms of the contract of sale, but it did prescribe that no promises entered into by him should be valid unless they be made to appear in writing on the order signed. In no other manner was the agent to make any agreement or representation in connection with such sales. It was a condition going to the essence of his authority, and any agreement or representation by him, not so made to appear, is void as to the plaintiff. *Smith* v. *Niagara Fire Ins. Co.*, 60 Vt. 682, 15 Atl. 353, 1 L. R. A. 216, 6 A. S. R. 144; *Pictorial League* v. *Nelson*, 69 Vt. 162, 37 Atl. 247.

The case last cited is much in point. There the contract of sale in the form of an order, procured by an agent of the

seller and signed by the buyer, had on its margin, signed by the seller and agent, the following: "The holder of this blank is authorized to receive orders for the Pictorial League. The proprietors are not responsible for any agreement not appearing on the face of this contract." The contract was for the furnishing of *one* cut and reading matter to illustrate the furniture and drapery business in the city of Burlington, only, for the term of one year from commencement. Subject to exception, defendant was permitted to give evidence tending to show that upon the occasion of the giving of the order, and before it was given, the agent represented that there would be sent by the plaintiff to the defendant each time, before the cut was sent him, a sample sheet containing not less than ten samples, from which he could select one, and the cut for that sample would then be sent to him; that the plaintiff did not perform this representation of the agent but sent cuts which the defendant did not want, and which were inferior to the sample exhibited by the agent. The admission of this evidence was held to be error, as allowing a further stipulation, resting in parol, to be added to the written contract, the order not specifying the quality of the cuts to be furnished; and that since the plaintiff had given notice by what was upon the margin of the order, that the agent was not authorized to bind it by any representation not embodied in the terms of the order, the defendant could not treat the agent as authorized to make any representations, or stipulations, which would bind the plaintiff, unless the same were so embodied in the written order.

[2, 3]   The foregoing cases to which reference is made are full authority for our holding in the instant case that, since the defendant gave the order in question with knowledge of the limited power imposed upon the salesman, no act or undertaking of the latter in connection therewith, in excess of such power, can give defendant any rights against the plaintiff. From this it follows that no part of the contract of sale can be oral—all undertakings connected therewith, to be valid, must be contained within the terms of the written contract. Nor do the principles apply under which parol evidence is admissible where the contract is only partially reduced to writing; for the writing here in question is not of that partial character, it purports on its face to state the whole contract. *Dixon* v. *Blondin,* 58 Vt. 689, 5 Atl. 514. It may be that this agreement

in writing is expressed in such short and incomplete terms as renders parol evidence admissible to explain that which is in itself unintelligible, such explanation not being inconsistent with the written terms, but be it so, the character of the writing as to covering the entire contract is not thereby changed. We think the writing in itself, either in express terms or by legal intent, contains all the essential elements of a valid contract of sale.  As to necessary implications of a written contract being a part of it, see *Caverly-Gould Co.* v. *Springfield,* 83 Vt. 396, 76 Atl. 39.

[4-6]   Defendant contended below and does now that the sale in question was by sample, and so by section 16 of the Uniform Sales Act there was an implied warranty that the bulk should correspond with the sample in quality; also that by the evidence defendant expressly made known to the salesman the particular purpose for which the goods were required, relying on the latter's judgment in this behalf, and hence, that under section 15, subdivision (1), there was an implied warranty that the goods would be reasonably fit for such purpose.  The contention of the plaintiff was and is that the sale was not by sample and so the provisions of section 16 do not apply; but that it was a sale of a specified article under its trade name, and by subdivision (4) of section 15, there was no implied warranty as to its fitness for any particular purpose.  The trial court sustained plaintiff's position in both respects, saving exceptions to defendant.  The questions thus reserved go to the legal effect of the contract of sale, and require careful consideration.

Section 15 states: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the sellers's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

*       *       *       *       *

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

＊    ＊    ＊    ＊    ＊"

The written contract makes no mention of a sample, nor does it contain anything indicating that in its making a sample was used or referred to. Since, as we have already held, the writing states the whole contract between the parties, parol evidence is not admissible to show that the goods were sold by sample; for (without regard to the salesman's limited authority) such a showing would be to add to the language used in the written instrument a further and independent condition, thereby bringing into the contract a warranty, in legal effect, that the goods sold should correspond with the sample in quality. 1 Williston, Sales (2nd Ed.) § 254; *Imperial Portrait Co.* v. *Bryan*, 111 Ga. 99, 36 S. E. 291; *Wiener* v. *Whipple*, 53 Wis. 298, 10 N. W. 433, 40 A. R. 775; *Harrison* v. *McCormick*, 89 Cal. 327, 26 Pac. 830, 23 A. S. R. 469. It is said by Professor Williston, in the section to which reference is made, that the same principles should govern the admissibility of parol evidence to show that a written contract, making no mention of a sample, was made with reference to a sample, as is laid down in regard to warranties, generally. As to the latter, the general rule of non-admissibility is established beyond question. *Reed* v. *Wood*, 9 Vt. 285; *Bond* v. *Clark*, 35 Vt. 577; *Isaacs* v. *Elkins*, 11 Vt. 679. There was no error in the ruling that the sale was not by sample and did not fall within the provisions of section 16; not was there error in the holding that the sale was of a specified article under its trade name and so, by subdivision (4) of section 15, carried with it no implied warranty as to the fitness of the goods for any particular purpose (*Quemahoning Coal Co.* v. *Sanitary E. S. Co.*, 88 N. J. Law, 174, 95 Atl. 986; *Boston Consolidated Gas Co.* v. *Folsom*, 237 Mass. 565, 130 N. E. 197; *Ohio Electric Co.* v. *Wisconsin-Minnesota Light, etc. Co.*, 161 Wis. 632, 155 N. W. 112), unless the fact that the buyer made known to the salesman the particular purpose for which the goods were required, and relied on his judgment—an element not mentioned in subdivision (4), but which is explicitly stated in subdivision (1)—is such a distinctive feature as to make the provisions of the latter, im-

plying a warranty, rather than those of the former, applicable in the circumstances of this case.

It is true that the provisions of subdivision (1), standing alone, are broad and comprehensive enough to include a sale of the class named in subdivision (4), if the specific sale contains the distinctive feature essential to the application of such provisions. It is also true that a sale of the class named in subdivision (4) may or may not have the distinctive feature mentioned.

Our Uniform Sales Act is what is sometimes and perhaps commonly designated as ''The American Sales Act,'' and was previously enacted in many other states, including Rhode Island. It was based on the English statute, ''Sales of Goods Act,'' enacted in 1893. 1 Williston on Sales (2nd Ed.), pp. 1, 2. In the second volume of that work, beginning on page 1781, the English statute is given in full. It appears that section 14 therein is in legal effect largely if not wholly like section 15 of the American Act, each having subdivisions; that subdivision (1) of the English statute comprises all of subdivisions (1) and (4) of the American statute, the provisions of the latter subdivision being, under a proviso, a clause engrafted upon the provisions of the former subdivision.

By section 74 of the Act of this State, we are required to give the enactment an interpretation and construction that shall effectuate its general purpose of making uniform the laws of the states which shall enact it. In view of this requirement, decisions of the highest courts in other states having such enactment, involving its interpretation or construction, are precedents of more than persuasive authority. Speaking generally, they are precedents by which we are more or less imperatively bound in cases where similar questions are presented. *Howard National Bank* v. *Arbuckle,* 92 Vt. 86, 102 Atl. 476; *Howard National Bank* v. *Wilson,* 96 Vt. 438, 120 Atl. 889. In *Matteson* v. *Legace,* 36 R. I. 223, 89 Atl. 713, the same question was before the court for consideration as is now under discussion in the case at bar. In its solution the court of that state points out that in the English statute a single paragraph contains in legal effect all and the same provisions contained in subdivisions (1) and (4) of section 15 of the Rhode Island statute, the provisions of the latter subdivision, under a proviso, being attached to the provisions of the former subdivision. Following what

the court said was the clear meaning of the English statute in that respect, it was held that subdivision (4) of said section 15 amounts to a proviso limiting the effect of the provisions of subdivision (1) of that section; and that where a sale is made of an article under its patent or other trade name there is no implied warranty of its fitness for any particular purpose, the provision of implied warranty in subdivision (1) not being applicable. We think this reasoning is sound in principle, and is equally applicable to the case at bar. We therefore hold that our statute in the respect named should be construed as if subdivision (4) stood as a proviso engrafted upon subdivision (1), taking out of the legal effect of the latter all sales of the class named in the former, whether the buyer makes known to the seller the particular purpose for which the goods are required, or not.

[7] It is further contended by defendant that, even though the writing be held to state the whole contract and so within the general rule excluding parol evidence of contemporaneous representations or agreements varying its terms or legal effect, parol evidence was admissible to show oral collateral representations or promises then made by the salesman for the purpose of inducing the defendant to enter into the contract; that his representations that the bulk of the goods should be in quality equal to the sample exhibited, were of such collateral character and made for the purpose of such inducement, as was also the promise that the plaintiff would put advertising matter in the papers immediately on delivery of the goods, to create a demand for them. Reference is made to many authorities in support of this position, including our own case of *Proctor* v. *Wiley*, 55 Vt. 344. Whatever might be said as to defendant's contentions in these respects, were such representations and promises within the scope of the salesman's authority, it is certain that he had no such authority. They were no part of the written contract. Yet they were contractual or quasi-contractual in law (1 Williston, Sales [2d Ed.] § 254), and so constituted promises which were not binding on the plaintiff, because not written on the order. No claim of ratification is made, nor is any question of fraud involved in the case. Reverting to what we said above in noticing the Pictorial League Case, it will be seen that on the particular point now under discussion that case is full authority for our holding.

Defendant says, however, that so far as appears in the report of that case no claim was made by the defendant that the parol evidence represented a condition or stipulation which was an inducement to the order or upon which the performance of the written agreement was to depend, and so the case is distinguishable from the one at bar. But as to the effect of the acts and stipulations of the agent in excess of his known limited power there is no material difference between the two cases. The representations, shown by the parol evidence in the Pictorial League Case, were collateral to the contract expressed in the writing, and were not embraced therein. It appears that they were made by plaintiff's agent, and that the defendant gave the order relying upon them. Whether this is tantamount to saying that the representations induced the contract, is of very little consequence here; for, being outside of the scope of the agent's known limited authority, and so not binding on the principal, parol evidence showing them was not admissible against the latter for any purpose. The extent to which, and the manner in which, a principal shall authorize his agent to act are matters completely within his determination, and a person dealing with the agent, having notice of the limited powers delegated to him, must stand the consequences if the agent transcends them. *Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181, 96 N. E. 424; *Brown* v. *West, Stone and Co.*, 69 Vt. 440, 38 Atl. 87.

[8, 9] Under exception defendant introduced evidence for the purpose of showing a rescission by it of the contract, and claims that on this question the case should have been submitted to the jury. This may be so if defendant had the right to rescind, and if the question be not controlled by some outstanding fact or facts concerning which there was no dispute. We have already observed that there was no warranty, either express or implied, as to the quality of the goods, nor as to their fitness for any particular purpose, and fraud was not an issue in the case. Yet as the goods were delivered to defendant without its previous examination, it was entitled by law to a reasonable opportunity of examining them for the purpose of ascertaining whether they were in conformity with the contract. Uniform Sales Act, § 47. Such an opportunity defendant had, but whether it was availed of is not now very material for at least two reasons: (1) no claim is made of non-

conformity in kind or quantity, the sole defect asserted being as to quality; and (2) acceptance by defendant. The latter received the goods from plaintiff on March 3, and put them into its warehouse, treating them like other merchandise in stock to be put out by it to customers in the filling of orders. The commodity was in cloth bags, each labelled "Wonder Window Washer." The undisputed evidence showed that defendand reshipped "probably a third of them" to its customers later, such reshipments being made on March 4, 7, 16, 20, and 28, charging the same on its books to such customers. In so reshipping the goods and charging them on its books, defendant was dealing with them as its own. Such acts were inconsistent with the ownership of the plaintiff, and under the Uniform Sales Act, § 48, constituted an acceptance of the goods. 2 Williston, Sales, § 483; *Locblein.* v. *Clements,* 130 Md. 627, 101 Atl. 693; *Ostman* v. *Lee,* 91 Conn. 731, 101 Atl. 23. That the statute in this respect is but declaratory of the common law is seen from the cases of *Brown* v. *Nelson,* 66 Vt. 660, 30 Atl. 94, and *Barrett* v. *Tyler,* 76 Vt. 108, 56 Atl. 534.

So far the case shows no ground affording defendant the right of rescission. But it is said the goods were worthless, and that this gave such right. In connection with this question may well be considered the defense of set-off, as thereby defendant seeks to recover back the purchase price paid by it to the plaintiff for the same designated kind of goods under a previous contract of sale dated January 30, 1922, (hereinafter called the first order,) a copy of which was received in evidence as Defendant's Exhibit A. This contract was in all respects like that contained in Plaintiff's Exhibit No. 1 (hereinafter called the second order), except as to date and the amount of goods sold. The goods specified in the first order were delivered to and accepted and paid for by defendant. They were received in defendant's warehouse on February 27, where they were put for the same purpose and treated in the same manner as were the goods of the second order, received March 3, following, to be put out to customers in the filling of their orders. At the time when each of these orders was given, the salesman turned over to defendant to be filled by it, certain orders which he had taken from retailers, for such goods, on the same kind of blanks. After the date last stated orders of customers were filled from the entire lot of goods in the warehouse, without

regard to distinction in any respect. Defendant's treasurer, F. E. Kimball, in testifying, estimated that a third of the goods of the second order were reshipped to customers, but that defendant's books did not show, and it had nothing from which it could tell, the specific lot from which they were taken; for before they were all reshipped the goods began to come back from the customers; that from about May 1 to the middle of August they came back in small quantities, and after that, in large quantities; that from seventy-five to ninetey per cent. of the goods put out to customers had been returned to defendant, but how many of either order there was no way of telling. Defendant's first order of goods amounted to $299.25, and its second order to $498.75, totalling $798. Defendant reshipped to customers to fill their orders, goods amounting approximately to $547.20, of which it received back from customers and gave them credit to the amount of $59.61. Thus it appears that defendant has received for goods sold and now has the money so received, approximately $487.78. The record shows that defendant was under no legal obligation to accept any of the goods returned by its customers, nor to pay back to them severally, either in money or credit, the sums received from them in payment for the goods. "It is a principle of ethics," says defendant's treasurer, Mr. Kimball, in testifying. Defendant asserts in argument, however, that its promise to pay back the money has the same effect in this case as does the payment in fact. Whether this would be so or not, as between defendant and the customers, if such promise were express, absolute, and unconditional, we need not inquire; for, so far as this case is concerned, it is a matter wholly between them, not affecting the rights or liabilities of the plaintiff.

[10, 11] Defendant's evidence tended to show that the goods were worthless to it for the purpose for which they were bought. This, however, was not enough to show a want of consideration, without evidence tending to show that they were worthless to the plaintiff also, no such evidence being offered or introduced. The burden in this respect was on the defendant. *Eastern Granite, etc., Co.* v. *Chapman & Co.,* 140 Ala. 440, 37 So. 199, 103 A. S. R. 58. In the absence of fraud, there being no express or implied warranty as to their quality, nor as to their fitness for any particular purpose, they cannot be said to be insufficient to support a promise to pay the price,

unless they were entirely worthless to either party. *Johnson* v. *Belanger*, 85 Vt. 249, 81 Atl. 621. Even though the goods were of no value to the defendant, if they were of some value to the plaintiff, or if the transfer of the property in them was a loss or detriment to the plaintiff, there was a sufficient consideration to sustain a promise. *Dorwin* v. *Smith*, 34 Vt. 69; *Ballard* v. *Burton*, 64 Vt. 387, 24 Atl. 769, 16 L. R. A. 664. In *Conner* v. *Henderson*, 15 Mass. 319, 8 A. D. 103, it was said that it may be presumed from the evidence reported that the principal subject of the contract was absolutely of no value, and so the returning of it would have been an idle act, yet the casks were of some value, and should have been restored, if the plaintiff would treat the sale as a nullity, and demand his money as paid without consideration. The same thing was held in *Bassett* v. *Brown*, 105 Mass. 558, and in *Morse* v. *Brackett*, 98 Mass. 205, and 104 Mass. 494.

[12] Defendant offered to show by the witness Kimball, when testifying, that the substance finally delivered under the second order "was a substance entirely useless for any purpose whatsoever, and of absolutely no value." The exclusion of this offer was, to say the least, harmless; for while defendant was still examining the witness on that same general subject, he testified that he could not "say about the value itself as a glass cleaner," that he never tested it himself.

[13] Defendant says it offered to return the goods in its possession and to pay for those used by it, but that plaintiff refused to accept the goods back. In this connection it should be borne in mind, as stated above, that the goods so offered to be returned were composed partly of those purchased under the first order, and partly of those purchased under the second order, without the possibility of separating or distinguishing them. The rescission claimed related solely to the second order, and the burden of establishing it is with the defendant. Only the goods received under that order could be returned in its rescission, and those offered being in part of other goods not distinguishable, there was no offer of return of which the plaintiff was bound to take notice, or affecting its rights in this case. In addition to this, it was not enough for defendant to offer to pay for the goods sold by it and not returned to its possession. Without deciding whether the remedy of rescission was open to defendant in such circumstances, it certainly could not

be successfully invoked without at least offering to return to plaintiff what defendant had received in the sale of those goods. *Phoenix Cotton Oil Co.* v. *Morrow-Stout Wholesale Grocery Co.*, (Mo. App.), 236 S. W. 415; *Continental Jewelry Co.* v. *Pugh*, 168 Ala. 295, 53 So. 324, Ann. Cas. 1912A, 657. Were this not so, defendant could, under its offer, retain a part of the consideration specified in the contract, namely, the 12½% of the purchase price of the part of the goods last mentioned, and yet rescind the contract. In the exercise of the right of rescission, if it exists, a party cannot rescind a contract, and yet retain a portion of the consideration. *Perley* v. *Balch*, 23 Pick. (Mass.) 283, 34 A. D. 56. If one partly alone would avail himself of that right, he must rescind the contract *in toto*, and not a part of it only. *Fay* v. *Oliver*, 20 Vt. 118, 49 A. D. 764; *Loomis* v. *Wainwright*, 21 Vt. 520.

[14] But it is said that the court is without jurisdiction for that (A) plaintiff is set up in the writ as "a corporation under the laws of the State of New York and having offices at and selling goods from New York City, and said state," whereas "it appears that plaintiff is a Canadian corporation authorized to do business in the State of New York." Granting all this to be so, no reason is stated why the so-called "misdescription" goes to the jurisdiction, and if the able counsel for defendant can present no reason the Court will not hunt for one. And (B) that it appeared in the trial court that the plaintiff is a foreign corporation doing business in this State, and had not when this action was brought, nor since complied with the provisions of the Chapter 212 of the General Laws, and particularly with section 4995 which states: "Except as otherwise provided, a foreign corporation shall not do business in this state until it has received a certificate of authority from the commissioner of foreign corporations." But the learned counsel, by oversight no doubt, failed to call our attention to section 5009 of the same chapter, which provides that a foreign corporation shall not maintain an action in this State upon a contract made by it in the State if, at the time of making such contract, it was doing business in the State without lawful authority.

That the two contracts in question were made in this State by plaintiff, a foreign corporation, is certain, and we may assume, without deciding (see *Parkhurst* v. *Brock*, 72 Vt. 355,

47 Atl. 1068, and *International Text Book Co.* v. *Lynch,* 81 Vt. 101, 69 Atl. 541), that this constituted doing business in the State without the lawful authority contemplated by section 5009 of the statute, yet as the goods were sold by plaintiff to be shipped from the state of New York to the defendant at Burlington, this State, its place of business, and were so shipped, the shipper to pay the freight, they constituted interstate commerce, and the plaintiff's right to maintain this action for the contract price is protected by the Federal Constitution, a right which cannot be denied by a state statute. *Livingston Mfg. Co.* v. *Rizzi Bros.,* 86 Vt. 419, 85 Atl. 912; *Kinnear & Gager Mfg. Co.* v. *Miner,* 89 Vt. 572, 96 Atl. 333.

The foregoing holdings are determinative of all material questions presented in argument, no reversible error being found.

*Judgment affirmed.*