THOMAS WASON *v.* ELIJAH ROWE.

A bill of sale of a horse in these words,—" Thomas Wason bought of Elijah
   Rowe one bay horse, five years old last July, considered sound,"—signed
   by the vendor and acknowledging payment of the price, does not import a
   warranty of soundness of the horse.

When a contract is reduced to writing, that alone must be the evidence of
   the terms of the contract; and the writing must receive its construction
   from the court, and not from the jury.

It is a general rule of law that testimony, which tends to prove the issue, is
   admissible.    Therefore it is error for the court to exclude depositions, of-
   fered for the purpose of proving the unsoundness of a horse, on the ground
   that they do not sufficiently identify the horse ; for the question of identity
   is to be determined by the jury, and the fact of the *unsoundness* might be
   proved by one witness, and the *identity* by another.

Wason *v.* Rowe.

ACTION ON THE .CASE, for that the plaintiff bargained with the defendant to buy of him a certain bay horse, and the defendant, knowing the horse to be unsound, by falsely warranting him to be sound, deceitfully sold the said horse to the plaintiff. Plea, the general issue, and trial by jury.

On trial the plaintiff gave in evidence a bill of sale, executed to him by the defendant, in these words. "Thomas Wason bought of Elijah Rowe one bay horse, five years old last July, considered sound. Price sixty five dollars. Rec'd payment."

(Signed) "ELIJAH ROWE."

"Washington, 21 Feb., 1842."

The plaintiff further introduced evidence tending to prove that the horse was unsound, and worth no more than twenty five dollars, and that he was unsound before the sale, and that known to the defendant, and that the defendant, at the sale, represented verbally to the plaintiff that the horse was sound, and that the plaintiff told the defendant that he wanted the horse for his own use, and did not want him, unless he was sound; and that thereupon the sale was concluded, and the bill of sale executed. The plaintiff, also, in order further to prove the unsoundness of the horse, offered in evidence the depositions of Harvey Warden and Alfred Chamberlin, which were objected to by the plaintiff as not sufficiently identifying the horse; and the objection was sustained, and the depositions excluded.

The plaintiff requested the court to charge the jury that the bill of sale contained a warranty of the soundness of the horse; but the court decided that it contained a *representation* only of soundness, to be considered by the jury in deciding whether there was deceit practiced by the defendant in the sale.

The plaintiff then requested the court to leave it to the jury, upon the parol and written evidence, to find a warranty, and to charge the jury that they were at liberty to find, upon the evidence, whether, or not, the defendant did warrant the horse sound. But the court charged the jury that they would not be at liberty to consider the bill of sale and the parol evidence other than as representations of soundness, in settling.the question of deceit.

The jury returned a verdict for the defendant. Exceptions by plaintiff.

Wason v. Rowe.

*A. Underwood* for plaintiff.

1. Does the bill of sale contain a warranty of soundness? The word "*warrant*" is not necessary to constitute a warranty. 1 Selw. N. P. 652, note. 10 Wend. 411. Chit. on Cont. 359, 360, and note. *Osgood* v. *Lewis,* 2 Har. & Gill 495. *Roberts* v. *Morgan,* 2 Cow. 438. *Jones* v. *Bright,* 5 Bing. 533. *Beeman* v. *Buck,* 3 Vt. 53. *Cook* v. *Mosely,* 13 Wend. 277, 440. The amount of the doctrine seems to be, that if, in the trade, the *seller affirm* the article *sound,* and the purchaser buy the article *as sound,* it is a *warranty* on the part of the seller. 4 N. Y. Dig. 1231.

In the case at bar it is difficult to see what *stronger* terms could have been made use of, in the bill of sale, to express a warranty, short of the word *warrant.* The language surely indicates that he *treated* the horse in the trade *as sound.* The price is evidence that the plaintiff so considered it. The language used in the case of *Beeman* v. *Buck* was *very similar.* In that case the defendant told the appraisers they might appraise the horse *as sound.* The appraisers accordingly, in making the appraisal, *considered* the horse *as sound,* and in that case the court held the language to be a warranty.

2. The court should have admitted the depositions of Warden and Chamberlin. The plaintiff's witnesses described the horse, and the description given in the depositions answers to that given by the witnesses, and tends to identify the horse with that purchased by the plaintiff of the defendant.

3. The plaintiff submits that the court should have let the bill of sale and parol testimony go to the jury, and the fact of warranty be found by them. *Whitney* v. *Sutton,* 10 Wend. 411. 1 Selw. 652, note. 4 N. Y. Dig. 1231. *Duffee* v. *Mason,* 8 Cow. 25.

*L. B. Vilas* for defendant.

1. If the parties had designed a warranty, it would have been very easy to have said so. If they had only said " sound," it would have looked more like it ; but the qualifying the word " sound," by saying " considered sound," shows that the defendant only meant to give the plaintiff to understand that the horse was sound, in his opinion, or as far as he knew, or had been able to discover.

2. There was no testimony offered to show that the depositions

alluded to the horse in question ; and, so far as the depositions are concerned, they apply to any other horse as well as this one, and were properly excluded.

The opinion of the court was delivered by

HEBARD, J.   On trial in the county court, the plaintiff offered the bill of sale, and asked the court to decide that the terms of it imported a warranty of the soundness of the horse.   But the court decided otherwise.   The plaintiff also requested the court to leave it to the jury, upon the parol and written evidence, to find a warranty.   This request also the court disregarded.   It is a familiar principle of law, that no particular form of words is necessary to constitute a warranty ; and, when the contract rests in parol, the whole testimony is submitted to the jury, for them to find from it what was the intention and understanding of the vendor.   But when the sale is consummated by a written transfer, without a clause of warranty inserted, the vendee is not permitted to show the representations and assertions made previous to the execution of the written contract; because the presumption of law is, that the writing contains the whole of the contract.   *Reid* v. *Van Nostrand,* 1 Wend. 424.

It is also a familar principle of law, that written instruments are to receive their construction from the court, and, for the purpose of ascertaining their meaning, are never submitted to the jury.

This view of the case brings us back to the bill of sale, for the purpose of determining whether any thing therein contained amounts to a warranty.   While we hold that no particular form of words, or phraseology, is necessary to constitute a warranty, we are not to forget that something is necessary that shall be certain, and expressive of the intention of the vendor.   There must be something *positive* and *unequivocal* concerning the thing sold, which the vendee relies upon, and which is understood by the parties, as an absolute assertion concerning the condition or quality of the thing sold, and not the mere expression of an opinion.   The only clause in this contract, upon which the plaintiff relies to constitute a warranty, is the naked expression, *"considered sound."*   It would be putting a very liberal construction upon words, and giving great latitude to construction, to say that that was an *assertion,* or *undertaking,* that the horse was sound.   When the contract remains in

Wason *v.* Rowe.

*parol,* the *time, manner, occasion,* and all the countless circumstances that attend a transaction, go to the jury together, for them to gather the intention from the whole. But when the contract is in writing, the writing only is permitted to speak, and the import of its language is to be judged of by the court.

The case of *Beeman* v. *Buck* has been cited;—but that case differs from this. The contract in that case was by parol, and there the court very properly submitted it to the jury, for them to find whether certain representations, in regard to the soundness of the horse, were *intended* and *understood* by the parties as an engagement that the horse was sound, or whether they were intended as a mere expression of opinion. The jury found the former, and, so long as the testimony tended to prove the fact, their finding is conclusive. Upon this part of the case the court find no error.

On the trial the plaintiff offered the depositions of two witnesses, which tended to prove the unsoundness of the horse. The depositions were objected to by the defendant, and excluded by the court. The objection taken to them is, that they do not sufficiently identify the horse in question. The rule of law in relation to the admission of testimony is, that, if it tend to prove the issue, it is admissible. In this case the important allegation, and one that must be proved, was, that the horse was unsound. The only fact, which the depositions tended to prove, was, that a certain horse was unsound. Having that fact, the jury are to find whether it is the same horse.

The horse in controversy is described in the plaintiff's declaration as a *bay horse;* in the bill of sale, he is called a *bay horse;* and the horse spoken of in the depositions is a *bay horse.* The testimony in these depositions tended to prove the issue, and they were admissible.

But it is said that there was sufficient proof without them, to establish the unsoundness of the horse. Of that fact, we have not the means, nor is it our province, to judge: That, at least, does not appear to be the ground of their exclusion. Being legal and pertinent testimony to prove the issue, we are only called upon to decide upon the legality of their rejection. Sitting as a court of errors, we have no discretion to exercise, after discovering an error in law. If we sat to decide upon applications for *new trials,*—in determining which, the court are allowed to exercise a measure of legal discretion,—we

67

might then look farther into the case, and see what probably would be the effect of this testimony, and, in view of the whole case, whether justice would require a new trial. But that not being the sphere in which our judgment is to be exercised, we can only say that the depositions were legal and pertinent to the issue, and should have been admitted ; and, their rejection being erroneous, for that the judgment of the county court must be reversed.