## JOHN W. HOBART *v.* SUMNER YOUNG.

*Evidence. Irrelevancy. Charge of court. Deceit and false warranty. Bill of sale amounting to warranty. When question for court.*

1. An important witness for the plaintiff having testified on cross-examination that he came from Boston at the plaintiff's request to attend the trial, but did not suppose the plaintiff would pay his expenses, the court may exclude the further question, "Did you come on a pass?"

2. The action being for deceit and false warranty in the sale of a horse, a witness for the defendant who testifies that he examined the horse just before the sale and that it was sound, cannot further state that he offered the defendant for the horse a price nearly equal to that paid by the plaintiff.

3. Where the declaration is in the double aspect of deceit and false warranty and the plaintiff claims to recover in both aspects, the charge of the court as to one aspect may be referred to the other, if upon the whole charge the jury must have correctly understood the law.

4. The terms of the sale were agreed upon June 2d. June 5th, the property was delivered and a bill of sale given. *Held*, that the plaintiff might recover upon a warranty made June 2d, evidence of the same having been received without objection.

5. Where the contract is in writing it is for the court to determine whether it constitutes a warranty or not.

6. A bill of sale of "one pair of black geldings, sound and kind," establishes a warranty of soundness.

Action for deceit and false warranty in the sale of a horse. Plea, the general issue. Trial by jury at the April term, 1890, Royce, Ch. J., presiding. Verdict and judgment for the plaintiff. Exceptions by the defendant.

The evidence of the plaintiff tended to show that in early June, 1888, he purchased a pair of horses of which the horse in

---

Hobart *v.* Young.

---

question was one; that he first saw these horses in May; that about the first of June he rode after them with the defendant; and that the defendant then warranted them to be sound. The plaintiff did not purchase them that day, but agreed with the defendant upon a price at which he could have them, and afterwards, on the 5th of June, sent his man Somers with a check and a bill of sale for them. The defendant received the check and signed the bill of sale. The horses were delivered by the defendant's brother. Upon getting the horses home the plaintiff ascertained that one of them had a ring-bone; which was the unsoundness complained of.

The plaintiff's evidence tended to show that the defendant knew of this unsoundness when he delivered the horses to the plaintiff. This the defendant denied, claiming that the horse was not in fact unsound when the plaintiff received it, that if unsound he had no knowledge of the unsoundness, and that he did not warrant the horse to be sound.

The aforesaid Somers was an important witness for the plaintiff upon all branches of the case. On cross-examination, he testified that he had come from Boston to attend the trial at Mr. Hobart's request, but that he did not suppose he would pay his expenses; whereupon the defendant proposed to further ask him whether he came on a pass.

The defendant produced three witnesses, Clark, Darby and Fairfield, who testified that they had carefully examined the horses just before the sale to the plaintiff, and that they were sound. The defendant desired to show in addition by them that they had offered him for the pair a price nearly equal to that paid by the plaintiff.

The bill of sale which the plaintiff signed was as follows:

"Alburgh, June 5th, 1888.

J. W. Hobart,

Bo't of Sumner Young, Esq.

One pair of black (Pilot) geldings, sound and kind, $487.50.

Hobart *v.* Young.

To be delivered on the cars at the depot with good halters, duties paid and certificates of the same attached hereto.

Rec'd payment,

S. YOUNG."

The defendant claimed that he was about taking the cars when this was presented to him and signed it without knowing its contents and supposing it was simply a bill of sale. Upon this point the court charged :

"Now, if you should find that he understood and knew what that paper contained at the time he did sign it, I think he is bound by it. And this paper expresses that those horses are sound and kind. If he did not read it, and he was induced to sign it simply by that representation that it was a bill of sale, and by that he had a right to understand that it was an ordinary bill of sale, without any further description or representation in reference to quality, I do not think the law would hold it as a warranty. It is a representation made in writing by him as to the kind and quality of the property that he was selling."

The court also instructed the jury that the plaintiff could recover if they found that the defendant warranted the horses upon the occasion when the plaintiff rode after them and agreed upon the price about June 1st.

*Wilson & Hall*, for the defendant.

The question to Somers should have been allowed to test his good faith and honesty.

2 Ph. Ev. No. 895 ; 1 Greenl. Ev. § 446.

Evidence of the offers made by Clark, Darby and Fairfield to the defendant should have been received. It rendered the truth of their testimony more evident.

*Armstrong* v. *Noble*, 55 Vt. 428, 433 ; *Richardson* v. *Royalton*, 6 Vt. 496 ; *Reed* v. *Reed*, 56 Vt. 492 ; *Bennett* v. *Stacy*, 48 Vt. 163 ; *Brown* v. *Belch*, 38 Vt. 241.

The bill of sale did not constitute a warranty. The words "sound and kind" are merely descriptive.

---

Hobart *v.* Young.

---

*Barrett* v. *Hall*, 1 Aik. 269 ; *Wasson* v. *Rowe*, 15 Vt. 525 ; *Richardson* v. *Grandey*, 49 Vt. 22.

A simple affirmation is not a warranty.

*Bond* v. *Clark*, 35 Vt. 577 ; *Foster* v. *Caldwell*, 18 Vt. 177 ; *Pennock* v. *Stygles*, 54 Vt. 226.

Evidence of what was said June 2d, was improperly submitted to the jury.

*Reed* v. *Wood*, 9 Vt. 285 ; *Bond* v. *Clark, supra.*

*Albert P. Cross*, for the plaintiff.

The bill of sale amounted to a warranty.

*Watson* v. *Rowe*, 16 Vt. 525 ; *Brown* v. *Bigelow*, 10 Allen 242.

The opinion of the court was delivered by

ROWELL, J.   As to the exclusion of the question put to Somers on cross-examination about his coming on a pass, it is enough to say that no offer was made to connect the plaintiff with furnishing him a pass if he came on one.   Without this, the plaintiff could not be affected by the fact that the witness came on a pass.

The reasons urged to show error in not allowing defendant's witnesses, Clark, Darby, and Fairfield, to testify their offers for the horses, come pretty much to the same point-relevancy to show soundness.   All these witnesses had carefully examined the horses as to soundness, and Clark testified that they were sound, and defendant's counsel say that the others did, and we think that is fairly inferable from the exceptions.   The defendant, therefore, had the full benefit of their testimony on that subject; and the attempt to prove their offers was but seeking to have them give supposed emphasis to their testimony by stating, in effect, that they felt certain enough that the horses were sound to make the offers for them without requiring a warranty.   It was, at best, an

indirect way of trying to get at what had already been gotten at directly. And certainly the offers standing alone would not have tended to show soundness; for the witnesses might have considered the horses unsound and yet have thought them worth what they offered for them, and so have been willing to buy them without a warranty.

It is claimed that in charging on the aspect of warranty, the court assumed that the horses were unsound at the time of sale, and did not give the jury to understand that it must find unsoundness then in order to warrant recovery on that ground. It is true that the court said nothing in that part of its charge about finding unsoundness; but in charging on the aspect of deceit, the court expressly told the jury that the burden of proving deceit was on the plaintiff, and that before they could find for him on that ground they must be convinced by a fair balance of evidence that the horse was unsound at the time; and in this connection the court charged that the same rule of evidence applied to the other branch of the case. We think it clear that the jury was not left to suppose that there could be a recovery on the warranty without finding a breach.

It is conceded that the court correctly charged the law of warranty, but claimed that it did not apply it to either branch of the case, for that it did not tell the jury that in order to make the defendant's representations binding upon him, he must have made them with the view of having the plaintiff receive them as true, and that the plaintiff must have made the purchase relying upon them. As to the aspect of warranty, certainly, this claim has no foundation, for in connection with the proposition of law conceded to contain all the elements of a warranty, the court expressly told the jury that they must make that rule their guide in applying the evidence, and determine whether what they found was said and done amounted to what the law calls a warranty. And again, in re-stating the questions at the close of the charge, the jury were told, among other things, that they were called upon

to determine whether there was a warranty under the law laid down to them, defining what a warranty is in law. All this was quite sufficient.

As to the aspect of deceit, the jury were told that they must determine from the evidence whether the horse had a ring-bone and whether defendant knew it; whether defendant practiced a deceit upon the plaintiff in palming the horses off onto him with that defect on one of them; whether there was any such deceit practiced in the sale of the horses as the evidence tended to show, and as must be shown in order to make the defendant liable on that ground. We think this was sufficient to give the jury to understand that they must find, both that the defendant intended to mislead plaintiff by his representations and that plaintiff was in fact misled by them, before they could make the defendant liable on this branch of the case. The language of the court imports an intentional deceit and palming off. To palm off means, to impose by fraud; to put off by unfair means. The language also imports that plaintiff must have been deceived and cheated by the misrepresentations, which he could not have been had he not relied upon them.

It was not error to submit to the jury to find whether there was a verbal warranty on the 2d of June, the last time plaintiff saw the horses before the purchase. Although he did not buy them that day, the price was then agreed upon at which he could have them. The testimony on the part of the plaintiff, admitted without objection, presented two aspects as to warranty, namely, that of a verbal warranty on June 2d, and that of a written warranty on June 5th. The defendant denied both, and said that the bill of sale did not contain a warranty, and that if it did, he was not bound by it because of the circumstances in which he signed the bill. No objection was made to the admission of the parol evidence as varying the written contract. In this posture of the case it was the duty of the court to submit both aspects of that question; for it is not necessary that representations, in order

to constitute a warranty, should be simultaneous with the conclusion of the bargain, but only that they should be made during the course of the negotiations that lead to the bargain, and should then enter into the bargain as a part of it. *Wilmot* v. *Hurd*, 11 Wend. 584; 2 Benj. Sales, § 929. (Corbin's Ed.)

An important question is, whether the words, "sound and kind," contained in the bill of sale, constitute an express warranty as matter of law.

The law of warranty has undergone much change since *Chandelor* v. *Lopus*, Cro. Jac. 4, decided in the Exchequer Chamber in 1803. It was there held that an affirmation that the thing sold was a bezoar-stone was no warranty; for it is said, every one in selling his wares will affirm that they are good, or that the horse he sells is sound, yet, if he does not warrant them to be so, it is no cause of action.

But latterly courts have manifested a strong disposition to construe liberally in favor of the purchaser what the seller affirms about the kind and quality of his goods, and have been disposed to treat such affirmations as warranties when the language will bear that construction, and it is fairly inferable that the purchaser so understood it. *Stone* v. *Denny*, 4 Met. 155; *Hawkins* v. *Pemberton*, 51 N. Y. 198. And now any affirmation as to the kind or quality of the thing sold, not uttered as matter of commendation, opinion, nor belief, made by the seller pending the treaty of sale, for the purpose of assuring the purchaser of the truth of the affirmation and of inducing him to make the purchase, if so received and relied upon by the purchaser, is deemed to be an express warranty. And in case of oral contracts, it is the province of the jury to decide, in view of all the circumstances attending the transaction, whether such a warranty exists or not. *Foster* v. *Caldwell's Estate*, 18 Vt. 176; *Bond* v. *Clark*, 35 Vt. 577; *Shippen* v. *Bowen*, 122 U. S. 575.

But when the contract is in writing, it is for the court to

construe it, and to decide whether it contains a warranty or not. *Wason* v. *Rowe*, 16 Vt. 525. And by the great weight of recent authority, positive statements in instruments evidencing contracts of sale, descriptive of the kind, or assertive of the quality and condition, of the thing sold, are treated as a part of the contract and regarded as warranties, if the language is reasonably suscept- ible of that construction and it is fairly inferable that the pur- chaser understood and relied upon it as such.

Thus, in *Hastings* v. *Lovering*, 2 Pick. 214, the sale-note described the article as " prime quality winter sperm oil." The plaintiff declared in assumpsit on a warranty, and had judgment. In *Henshaw* v. *Robins*, 9 Met. 83, the bill of particulars affirmed the article to be indigo. The court said that that imported an express warranty if it was so intended, and that it must be taken to have been so intended, as there was no evidence to the con- trary. In *Brown* v. *Bigelow*, 10 Allen 242, a case exactly in point, these very words, sound and kind, were held to constitute a general warranty of soundness. In *Gould* v. *Stein*, 149 Mass. 570, (s. c. 14 Am. St. Rep. 455,) a bought and sold note de- scribed the article as,"Ceara scrap-rubber as per sample, of second quality." The court said that it did not admit of doubt that the note was intended to express the terms of the sale, and that the contract of the parties was to be found in what was thus written, read in the light of the attendant circumstances. Held, a war- ranty that the rubber was of second quality, and that the fact that the plaintiff made such examination of it as he pleased, did not necessarily do away with the warranty.

*Osgood* v. *Lewis*, 2 Harris & Gill (Md.) 495, (s. c. 18 Am. Dec. 317,) is a leading case on this subject. There the bill of particulars contained a statement that the article was "winter- pressed sperm oil," and the question was, whether those words were *per se* a warranty ; and it was held that they were, for, it was said, they could not be regarded as mere matter of opinion or belief, but as the assertion of a material fact that the defend- ant assumed to know and to warrant the existence of.

In *Kearly* v. *Duncan,* 1 Head (Tenn.) 397, (s. c. 73 Am. Dec. 179,) the words, "said negroes sound in body and mind," contained in a receipt for the price paid for them, were held clearly to constitute a warranty of soundness.

The words, "being of sound mind and limb and free from all disease," in a bill of sale of slaves, were held a warranty in *Cramer* v. *Bradshaw*, 10 Johns. 484.

This case is criticised by Bennett, J., in *Foster* v. *Caldwell's Estate*, 18 Vt. 181, who would treat the words as a mere representation, descriptive of the property sold. But that case seems to have stood the test in New York, while *Seixas* v. *Woods*, 2 Caines 48, and *Swett* v. *Colgate*, 20 Johns. 203, to which he refers, and which held that no warranty arises from a description of the kind of property sold, have been expressly overruled by *Hawkins* v. *Pemberton*, 51 N. Y. 198, as not properly applying the doctrine that they correctly announce, wherein a contrary application is made, and wherein it is held that there is no distinction in principle between a representation as to quality and condition and a representation as to kind and character. And in 1 Smith Lead. Cas. 341 (7th. Am. Ed.) it is said that such a distinction is too refined to be practicable.

In *Yates* v. *Pym*, 6 Taunt. 446, a description of bacon in a sale-note as "prime singed," was held to be a warranty that it was prime singed.

So in *Bridge* v. *Wain*, 1 Stark. 504, the goods sold were described in the invoice as "scarlet-cuttings." Held, a warranty that they answered the known mercantile description of scarlet-cuttings.

The advertisement of the sale of a ship described her as a "copper-fastened vessel," whereas she was only partially copper-fastened, and not what was called in the trade a copper-fastened vessel. Held, a warranty that she was copper-fastened. *Shepherd* v. *Kain*, 5 B. & Ald. 240.

A sold-note described turnip seed as "Skirvings' Swedes."

Coleridge, J., said that there was no doubt that the statement was made by the defendant a part of the contract, and it was held to be a warranty that the seed was Skirvings'. *Allan* v. *Lake*, 18 Q. B. 560.

In *Wetherill* v. *Neilson*, 20 Pa. St. 448, (s. c. 59 Am. Dec. 741,) the bill of sale described the soda-ash as being of a certain strength, whereas it was of a less strength and unmerchantable. Held, no warranty. It is said in 1 Smith Lead. Cas. 343 (7th. Am. Ed.) that this case stands almost if not quite alone, and cannot be reconciled with the general course of decisions in this country and in England.

In *Barrett* v. *Hall*, 1 Aik. 269, the note was payable in "good cooking stoves." The court said that no definite quality could be intended from the term *good*, and that it imported nothing but opinion, and was no warranty, and referred to *Chandelor* v. *Lopus*, Cro. Jac. 4, for authority, which is no longer authority. But we do not say that the court was wrong in that case, for *good* is a very common term of praise in trade, and as used in the note, ascribed no particular quality to the stoves, and might well be regarded in that case as mere matter of opinion or commendation and as so understood by the parties.

In *Wason* v. *Rowe*, 16 Vt. 525, the bill of sale said the horse was "considered sound." Held, no warranty; and with good reason, for "considered" was no assertion of a fact, but a mere expression of opinion.

The more recent cases in this state recognize the general rule that positive statements of fact by the seller in respect of the kind or the quality of the thing sold that constitute a part of the contract or form its basis and that are fairly susceptible of such a construction, are to be regarded as warranties.

Thus, in *Beals* v. *Olmstead*, 24 Vt. 114, one of the reasons given why the defendant's statements ought to be regarded as warranties is, that they were made positively, and concerning matters as to which he was supposed and professed to have

Hobart *v.* Young.

knowledge; therefore, it is said, he ought to expect to be bound by them. See also, *Drew* v. *Ellison*, 60 Vt. 401; *Enger* v. *Dawley*, 62 Vt. 164.

It is sufficiently certain as matter of construction that the words "sound and kind," found in the bill of sale before us, were intended by the parties to be a part of the contract of sale; and as such, it would be unreasonable to construe them as an expression of mere opinion, when they positively ascribe to the horses a condition and a quality that the defendant assumed to know they possessed and that he had peculiar means of knowing whether they possessed or not, while the plaintiff had no such means. We think the words, reading the instrument in the light of the attendant circumstances, clearly constitute an express warranty of soundness, and that the Chief Judge was right in so holding.

*Judgment affirmed.*