(No. 13535.—Reversed and remanded.)
S. C. VanHorn, Defendant in Error, *vs.* William A.
Stautz, Plaintiff in Error.

*Opinion filed April 21, 1921—Rehearing denied June 8, 1921.*

1. Sales—*what will constitute warranty in oral contract of sale.*
A positive assertion of a matter of fact made by a seller at the
time of the sale will constitute a warranty where the statement is
made for the purpose of assuring the buyer of the fact and in-
ducing him to make the purchase and is accepted and relied on
by the purchaser.

2. Same—*when controverted questions of fact will be regarded
as settled on review.* In a suit for breach of warranty in a con-
tract of sale of personal property all controverted questions of fact
will be regarded as conclusively settled in the Supreme Court,
where the Appellate Court has affirmed the judgment of the trial
court based on the verdict of the jury, rendered after hearing all
the evidence.

3. Same—*whether oral statements of vendor constitute a war-
ranty is a question for the jury—instruction.* Whether oral state-
ments of a vendor constitute a warranty is a question of fact for
the jury, who are to determine the intention of the vendor from
the words used, the circumstances and the subject matter; and it
is error to instruct the jury that if the vendor told the plaintiff
that "the hogs in question were all right, or that in substance," the
jury should find for the plaintiff if they are of opinion that the
evidence shows the hogs were not all right at the time of the sale.

4. Same—*language of vendor must indicate intention to war-
rant before warranty is created.* Notwithstanding the purchaser of
personal property by oral contract may have relied upon the rep-
resentations of the vendor as to the quality of the goods, there is
no warranty if there is no intention on the part of the vendor to
warrant and if he uses no language fairly implying such intent.

5. Same—*what does not amount to a warranty.* A simple com-
mendation of the goods or a representation that they are of a cer-
tain quality does not amount to a warranty in the absence of such
an intent of the vendor fairly determined from the language used
in connection with the circumstances of the sale.

6. Same—*when vendor is not responsible for defects in quality
of goods.* The vendor of goods which the purchaser has at the
time of purchase full opportunity of examining is not responsible
for defects of quality in the absence of fraud and warranty.

Farmer and Stone, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

A. E. & R. C. DEMANGE, for plaintiff in error.

FRANK GILLESPIE, and LIVINGSTON & WHITMORE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

S. C. VanHorn recovered a judgment for $1200 in the circuit court of McLean county against William A. Stautz, which the Appellate Court affirmed, and the record has been brought here by a writ of *certiorari.*

The form of the action was assumpsit, and the declaration alleged the breach of an express warranty that 164 head of hogs sold by the defendant to the plaintiff were sound. The plea was the general issue. The hogs were not sound, and the question of fact for the jury on the trial was whether or not defendant warranted that they were sound. There was no written contract. The whole transaction was in parol and on the part of the defendant was conducted by an agent named Hollis. Whether there was any warranty depends upon the language used by the plaintiff and Hollis and the circumstances under which it was used.

The evidence is contradictory. The defendant was in the live stock business in Bloomington, shipping hogs from Missouri and selling them. The plaintiff testified that on September 21, 1918, he met Hollis, who asked him if he wanted a load of feeding hogs. The plaintiff said he did, and Hollis asked what kind of hogs the plaintiff wanted. The plaintiff told him immune, healthy hogs that weighed about 100 pounds, and asked the price, which Hollis said would be twenty cents a pound. The plaintiff said all

right—for good, healthy, immune hogs he would give that, and Hollis said he would get them for him. On Sunday morning, September 29, having been notified by Hollis by telephone that the hogs were at Funk's Grove, the plaintiff asked if they were all right and said he did not want them if they were not, and Hollis said they were all right and told the plaintiff to bring some corn to feed them. The plaintiff and Hollis met about ten o'clock and looked over the hogs. The plaintiff said he did not like their looks, and Hollis asked if it was because they looked so thin. The plaintiff said it was not because they were thin but because they did not look right,—they looked "gaunted up." Hollis said they were all right but having been on the car so long made them look that way; that Laurence and Dean Funk got hogs like them and they were doing fine. The plaintiff said if they were not all right he did not want them at any price, and Hollis again said they were all right. They found some little pigs which had the thumps. Hollis said that was caused by their having been on the car four or five days. These and one other with a broken leg were taken out, and for the 164 head which remained the plaintiff gave his check payable to the defendant for $3198. The next morning the plaintiff hauled the hogs to his farm. That afternoon several of them were sick, the next day many more, and in the end 62 of them died.

Hollis testified that the plaintiff told him he wanted some stock hogs, and Hollis said he thought he could suit the plaintiff. The plaintiff asked what they were worth, and Hollis said he had been selling some at twenty cents a pound. The plaintiff said he would like to have some soon. Hollis told the plaintiff he did not know just when he could get the hogs but would let the plaintiff know when Hollis got a load that the plaintiff could see. Hollis told him they were Missouri hogs, and it would be easier to get the hogs at McLean or Funk's Grove. The plaintiff said he would like to have hogs around 100 pounds, and Hollis

said he thought he could furnish hogs of about that weight. The plaintiff said he wanted immune hogs and did not say he wanted nothing but healthy hogs, and Hollis said he would furnish vaccinated or immune hogs. On the last Friday in September Hollis got a telegram that the hogs were shipped and that evening called the plaintiff and told him that they would be at Funk's Grove Saturday morning, and the plaintiff said he would come over and look at them. The plaintiff, the defendant and Hollis were at Funk's Grove Saturday morning but the hogs did not arrive until eight o'clock that evening. The defendant and Hollis unloaded and fed the hogs, which ate and drank. They came from West Plains, Missouri, and neither the defendant nor Hollis had seen them before. Hollis notified the plaintiff Sunday morning that the hogs were there and asked if he would come over and look at them, and the plaintiff said he would be there. Nothing was said about the hogs being healthy. He was to come over and look at the hogs. He had never said that he did not want them if they were not healthy. When Hollis and the plaintiff met at Funk's Grove they were from a half hour to an hour in the pen looking the hogs over and counting them. Hollis said nothing to the plaintiff about the hogs being in a healthy condition, and did not tell him there or at any time that he knew the hogs were all right, that they were all right or that they were healthy.

The expression "immune hogs," as shown by the evidence, means hogs treated for cholera and does not cover any other disease. These hogs had been vaccinated for cholera. The disease with which they were affected was mixed infection, which is a different disease from cholera.

The charge in the declaration is that the defendant warranted that the hogs were sound; the plaintiff's evidence is that Hollis said they were all right. Neither the word "warrant" nor the word "sound" occurs in the testimony, but no particular words or forms of expression are neces-

sary to create a warranty. A positive assertion of a matter of fact made by a seller at the time of the sale for the purpose of assuring the buyer of the fact and inducing him to make the purchase and accepted and relied on by the purchaser constitutes a warranty. *Robinson* v. *Harvey,* 82 Ill. 58.

The Appellate Court has affirmed the judgment of the trial court based on the verdict of a jury rendered after hearing all the evidence, and we must regard all the questions of fact which were controverted on the trial as conclusively determined in favor of the plaintiff.

The court instructed the jury as follows:

"If you believe from the evidence in this case that Al Hollis, the witness, told the plaintiff, S. C. VanHorn, on or about the 29th day of September at Funk's Grove, at the time the hogs were delivered to the plaintiff, that the hogs in question were all right, or that in substance, and if you further believe from the evidence that the plaintiff relied upon such statement, and paid William A. Stautz, the defendant, $3198 for the hogs in question, and that at the time of the said delivery of the said hogs, said hogs were not all right, but that many of said hogs died from a disease which they had at the time of said delivery to the plaintiff, if you believe from the evidence that they were at that time diseased, then and in such case, your verdict should be in favor of the plaintiff for such damages, if any, you may believe from the evidence he has sustained by reason of the said hogs being diseased at the time of said sale."

This instruction made the question of warranty and the verdict of the jury depend entirely upon the question whether Hollis said to the plaintiff that the hogs were all right, or that in substance, and whether the plaintiff relied on such statement. It ignores entirely the circumstances under which the statement may have been made, any limitation of its meaning by such circumstances, and the ques-

tion whether the statement, if made, was made for the purpose of assuring the buyer of the fact for the purpose of inducing him to purchase and whether the buyer had any reason to suppose it was made for such purpose. The positive averment of a fact by a seller in regard to the thing sold does not necessarily constitute a warranty, but it must further appear that the affirmation was made for the purpose of assuring the buyer of the truth of the fact asserted and inducing him to make the purchase and that it was relied on by him. "Though to constitute a warranty requires no particular form of words, the naked averment of a fact is neither a warranty of itself nor evidence of it. In connection with other circumstances it certainly may be taken into consideration, but the jury must be satisfied from the whole that the vendor actually, and not constructively, consented to be bound for the truth of his representation. Should he have used expressions fairly importing a willingness to be thus bound it would furnish a reason to infer that he had intentionally induced the vendee to treat on that basis; but a naked affirmation is not to be dealt with as a warranty merely because the vendee had gratuitously relied on it, for not to have exacted a direct engagement had he desired to buy on the vendor's judgment must be accounted an instance of folly. Testing the vendor's responsibility by these principles, justice will be done without driving him into the toils of an imaginary contract." *McFarland* v. *Newman,* 9 Watts, 55; *Holmes* v. *Tyson,* 147 Pa. 305.

The above rule was announced in an early decision of this court, (*Ender* v. *Scott,* 11 Ill. 35,) an action to recover damages for the breach of a warranty on an exchange of horses. The court instructed the jury that if "the defendant represented in positive terms to the plaintiff, at the time of and before the exchange, that the mare was sound, except the distemper, such positive assertion will amount to a warranty, which, if false, the defendant is liable for."

In reversing a judgment for the plaintiff for the giving of this instruction it was said: "The instruction was clearly erroneous. In order to constitute a warranty there must be not only an affirmation respecting the quality or condition of the thing sold, but the affirmation must be made with the view of assuring the buyer of the truth of the fact asserted and inducing him to make the purchase, which is so received and relied on by him. (*Hawkins* v. *Berry,* 5 Gilm. 36.) The instruction is not broad enough to embrace this definition of a warranty. The facts stated in it may all have been true and still such a thing as a warranty not have entered into the minds of the parties. The plaintiff may not have intended the assertion as a proposition to warrant the soundness of the horse, nor the defendant have accepted and acted on it as such."

In *Adams* v. *Johnson,* 15 Ill. 345, the maker of a promissory note given for a shingle machine defended on the ground of a breach of warranty of the quality of the machine and was defeated. In affirming the judgment this court said: "The evidence relied upon to prove the warranty is a statement of the plaintiff below in his answer to a bill of discovery, in which he says 'that this defendant may have represented that the said machine would manufacture shingles without checking or splitting them, or words to that effect; do not remember the words used.' This we do not think was evidence of a warranty of the quality of this machine or the invention. While no particular form of words is required to make a warranty, nor is it necessary that the word 'warrant' should be used to form such a contract, still it is necessary that such expressions should be used as show the intention of the party to bind himself to make good the quality of the articles as described or represented, and not a mere statement or expression of opinion as to the quality or character of the article sold. The evidence should show not only that the purchase was of the article as exhibited, but also that the

purchase money was paid for the undertaking of the seller that the article sold was of a particular quality. In order to constitute a warranty such undertaking must enter into and form an essential element in the consideration of the bargain. Should every expression of opinion upon the sale of an article be held to create a warranty, proof would not be wanting in almost every instance of the sale of chattels to establish a warranty, for but few articles are sold where the vendor does not praise his wares, and such encomiums are generally understood by purchasers as they are intended by the sellers. Where a warranty is intended something more than this is done, and the intention of the parties is clearly manifest to that effect."

In *Wheeler* v. *Reed,* 36 Ill. 81, the rule is again recognized that an affirmation of quality, to amount to a warranty on the part of the seller, must appear to have been made at the time of the sale with the intention of warranting the quality and not as a mere expression of opinion, the court saying: "Whether or not certain words or declarations amount to a warranty is a question of intention, and so the court instructed the jury on behalf of the defendant. The court told the jury, in the language of the defendant's counsel, that unless they believed from the evidence that the defendant, with the intention of thereby warranting the quality of the flour sold by him to the plaintiffs, represented it to be in quality equal to flour known as Albion Mills flour in the New York market in the fall of 1860, or that it was of the same quality as the Albion Mills flour previously known in the market, and that plaintiffs purchased it relying upon said representations as a warranty of the quality of the flour, they will find for the defendant. And in this instruction, also, the intention was fairly left to the jury. They were told, while it was not necessary the word 'warrant' should be used in order to make a warranty of the quality of the article sold, yet to make any affirmation or representation of the quality

amount to a warranty on the part of the seller it must appear to have been made at the time of the sale with the intention of thereby warranting the quality of the article, and not a mere expression of the seller's opinion."

This court has repeatedly held that no particular form of words is necessary to make a warranty. It is a question of intention from the words used, the circumstances and the subject matter, for the jury to consider. *Thorne* v. *McVeagh,* 75 Ill. 81.

In an action to recover the price of 110 barrels of apples the defense was that the apples, when the barrels were opened, were found to be decayed and worthless. The jury were instructed that if the plaintiffs represented the apples to be good and the defendant bought them relying on the representation, and they were bad and unmerchantable and the defendant offered at once to return them, he would not be liable for the price. It was held that this instruction did not state the law in reference to the sale of personal property which is open to the inspection and examination of the purchaser. In such cases it is immaterial how far the purchaser may rely upon the representations of the vendor as to the quality of the goods, if there was no intention on the part of the vendor to warrant and if he used no language fairly implying such an intent. The vendor of goods which the purchaser has, at the time of purchase, the opportunity of examining is not responsible for defects of quality in the absence of fraud and warranty; and although no particular form of words is requisite to constitute a warranty, yet a simple commendation of the goods or a representation that they are of a certain quality does not make a warranty, unless the language of the vendor, taken in connection with the circumstances of the sale, fairly implies an intention on his part to be understood as warranting. *Hanson* v. *Busse,* 45 Ill. 496.

The rule is again recognized in later cases that it is a question for the jury to determine from the evidence

whether or not the representations made by the seller are mere expressions of opinion or statements of fact intended to be relied on as an inducement for the purchase. (*Reed v. Hastings,* 61 Ill. 266; *Carondelet Iron Works* v. *Moore,* 78 id. 65; *Kenner* v. *Harding,* 85 id. 264; *Roberts* v. *Applegate,* 153 id. 210.) In *Kenner* v. *Harding, supra,* it was said: "In determining whether there was, in fact, a warranty, the decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case there is a warranty; in the latter not."

Counsel for the defendant in error contend that the question whether what was said by Hollis to the defendant in error prior to and at the time of the sale amounted to a warranty was one of law for the court to decide and not a question of fact to be passed upon by the jury; but the cases cited decide that where the affirmations relied upon to constitute a warranty are oral, it is the province of the jury to determine from all the circumstances whether they amount to an express warranty. It was so decided in the case of *Shippen* v. *Bowen,* 122 U. S. 576, the court quoting from the opinion of the court of appeals of Maryland in *Osgood* v. *Lewis,* 2 Harr. & G. 495: "An affirmation of the quality or condition of the thing sold, not uttered as matter of opinion or belief, made by the seller at the time of sale for the purpose of assuring the buyer of the truth of the facts affirmed and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty; and in case of oral contracts, on the existence of these necessary ingredients to such a warranty it is the province of the jury to decide, upon considering all the circumstances attending the transaction." Other authorities were cited to the same effect, including

*Hawkins* v. *Berry, supra.* In *Hobart* v. *Young,* 63 Vt. 363, it is said: "In cases of oral contracts it is the province of the jury to decide, in view of all the circumstances attending the transaction, whether such a warranty exists or not. * * * But when the contract is in writing it is for the court to construe and to decide whether it contains a warranty or not."

These cases are in accord with the decisions of this court. We have to regard the controverted facts as having been found adversely to the defendant, but the court could not assume such facts in instructing the jury. It was not enough that the defendant should have told the plaintiff that the hogs were sound, but it was necessary that the circumstances should have been such as to indicate that it was his intention to warrant their sound condition or that the plaintiff was justified in believing that he intended to warrant it. In fact, the jury might well have believed that Hollis and the defendant had no more knowledge of the hogs than the plaintiff had and that the plaintiff knew it, and whether under the circumstances the plaintiff intended to exact a warranty and relied upon it in making the purchase, or whether the defendant intended to warrant the condition of the hogs for the purpose of inducing the purchase, were questions to be taken into consideration by the jury in determining the issue whether a warranty was made. It was error to give this instruction.

The judgments of the Appellate and the circuit courts will be reversed and the cause will be remanded to the circuit court.       *Reversed and remanded.*

Farmer and Stone, JJ., dissenting.