Phyllis Beckett, Appellee, v. F. W. Woolworth Co., Appellant.

Gen. No. 41,009.

BURKE, J., dissenting.

Opinion filed June 19, 1940.   Rehearing denied September 10, 1940.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellant; WILLIAM H. SYMMES, DAVID JACKER and CHARLES M. RUSH, all of Chicago, of counsel.

MURPHY O. TATE and OSCAR JORDAN, both of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an action for damages for an eye injury which the plaintiff claims was caused by poisonous and harmful substances contained in a tube of ''Pinaud's Six-Twelve Creamy Mascara,'' purchased by her from the retailer, F. W. Woolworth Company, the defendant. The manufacturer of the article is not a party to this action.  The cause was submitted to a jury who rendered a verdict in favor of plaintiff and assessed the damages at $11,250.

At the close of the plaintiff's case and at the close of all the evidence, the defendant filed motions for directed verdicts; both motions were denied. After the verdict, defendant filed a motion for judgment notwithstanding the verdict, and a motion for a new trial. The motion for judgment notwithstanding the verdict was denied and the court ordered that the plaintiff file a remittitur of $5,250 within 20 days or the defendant's motion for a new trial would be granted. The plaintiff then remitted $5,250 from the verdict. The defendant renewed its motion for a new trial and moved in arrest of judgment on the verdict as remitted, both of which motions were denied, and the court thereupon entered judgment against the defendant for $6,000.

The complaint bases the liability of the defendant on the theory of a breach of warranty. The defendant filed an amendment to its answer setting forth that the sale of "Pinaud's Six-Twelve Creamy Mascara" was a sale under a trade name, presenting the defense that there is no implied warranty by a retailer in the sale of an article under a trade name.

The cause was submitted to the jury upon instructions and upon consideration the verdict as suggested was rendered.

The facts as they appear from the statements of the parties in this action are that the plaintiff is a single woman, 35 years of age, and has been in the millinery business for 16 years. The defendant is a corporation which maintains a chain of "five and ten cent stores." "Pinaud's Six-Twelve Creamy Mascara" is a preparation to be used by women for the purpose of beautifying the eyelashes. It is made up of the following ingredients; oil, fat, water, lamp black and soap. This mascara is sold in tubes which are attached to small cards along with little brushes for applying it. The card, tube and brush are made by Pinaud, Inc., of New York City. The tube of mascara is prepared by a machine which automatically mixes, fills and seals the tube. These are

shipped to retailers in boxes containing one dozen. In 1937, 1,500,000 tubes were sold in various chain stores. The chief chemist of Pinaud testified that they had one other claim that "Pinaud's Six-Twelve Creamy Mascara" caused injury to the eye, and there also was one witness for plaintiff who testified that by reason of a certain odor given off in a test, he believed that the mascara contained an aniline dye.

It also appears that plaintiff had been using "Pinaud's Six-Twelve Creamy Mascara" for some time and had been purchasing it from defendant for 8 years and that she never had any trouble in applying it before.

The plaintiff testified that on Friday, September 3, 1937, she entered one of defendant's stores and had a cup of coffee and then stopped at the cosmetic counter and picked up a tube of "Pinaud's Six-Twelve Creamy Mascara" by its trade name. She testified that she had some conversation with the clerk regarding the mascara; that she picked the card up and told the clerk that she would take it with her. At that time she said to the clerk "this mascara is safe isn't it?" and that the clerk replied, "It is on the tube—it says harmless," and that plaintiff said, "I'll take it," and then she bought it.

Plaintiff testified that she had bought this mascara before but that she had never had any trouble with it, but that she never got any of it in her eye. She took the mascara home in a bag. She used it next evening, which was Saturday, putting it on her eyelashes at about 11:00 P.M. as she was preparing to go out. She testified that as she was applying it to the lashes of her right eye some of the mascara fell into the eye. The eye itched and smarted and she tried to remove it by rolling the eye around, but did not use any object like a handkerchief to get the mascara out.

The next day the right eye became swollen and she called in Dr. Wise who gave her an eye wash. About

Wednesday she went to the Illinois Eye and Ear Infirmary where she remained about four days. She then went to her sister's home, where her sister's husband, Mr. Oscar Jordan, one of the attorneys representing her in this case, called in Dr. Maurice Snitman. Dr. Snitman ordered the plaintiff to the North Shore Hospital where Dr. Snitman called Dr. Coles. Dr. Coles operated on plaintiff's right eye on or about September 22, 1937. Dr. Coles diagnosed plaintiff's infection as a serpiginous ulcer, which is a type of perforating ulcer. A serpiginous ulcer derives its name from its serpentine shape, and it is the name usually reserved for infection by the pneumococcus germ. A few days after the operation the plaintiff had some trouble with the left eye, resulting in little blisters on the cornea of her left eye.

On September 20, Dr. Snitman made a smear from the plaintiff's eye and examined it under a microscope, finding some staphylococci. About a week later he got the tube from Miss Beckett and took it to the hospital technician. At this time the tube was broken. A smear was made on September 29, which revealed bacteria, which the technician testified, over objections, were "about staphylococcus, germs of negligible bacilli."

Miss Beckett testified that after using the mascara on the night of September 4, 1937, she screwed the cap back on the tube and placed it in her drawer. There is some conflict in the evidence as to the way the tube reached the hospital and Dr. Snitman. Plaintiff stated that she carried it to the hospital in her purse. However, she admitted that she testified in her discovery deposition that the last time she saw the tube was in the hospital and that she did not remember who brought it there.

It appears from the testimony of the plaintiff that before the accident in 1937 her general condition and health was perfect and her eyes were perfect, that she had been engaged for 16 years in the millinery business and at the time of the accident she was 35 years of age, and that she wore glasses only for close sewing. She is

an unmarried woman who lived at home with her parents.

As to the damages to her eye her testimony was that she does not have any sight in the right eye. She says that she can see light from dark but cannot see an object and cannot read a letter; that the only thing she can distinguish is dark from light.

On her cross-examination she testified that she applied the mascara with brush near the eyelashes and in the proper manner, and that she did not at any time during the operation apply her hand or finger to her eye. As we have already indicated, after the application to one eye the itching sensation commenced and after 2 hours the sensation was sufficiently great that she felt it necessary to call a physician.

There is some evidence that the boric acid which she adapted as a harmless first aid remedy was a fresh solution which she purchased in crystal form from a local drug store and made up the solution in boiling water.

It would appear that a Dr. McNally, a chemist and toxicologist connected with Rush Medical College, as well as with the Cook County Health Department, received the vial, and as the result of his analysis found an amine and phenolytic aniline base present. He described the test fully and the manner in which he made it and stated his conclusion that "Toxicologically speaking, it is a poisonous substance."

The defendant contends and again calls the court's attention to the fact that the manufacturer of the product complained of was not a party to this suit and that the only defendant is the retailer. From the evidence it appears that "Pinaud's Six-Twelve Creamy Mascara" was prepared entirely by the manufacturer in New York. The card with the brush and tube attached were shipped and sold in the original package just as received from the manufacturer.

The plaintiff calls attention to the defendant's brief that cases are cited in support of defendant's contention that under the statute law of this State (sec. 15, par.

(4), ch. 121½, Ill. Rev. Stat., 1939 [Jones Ill. Stats. Ann. 121.19]) the plaintiff cannot recover for damages sustained by the use of an article sold under a trade name in the original package, because there is no implied warranty as to fitness for any particular purpose; and directs attention to this section of the statute and in reply states that the plaintiff's theory is that recovery should be had entirely under an express warranty and not under an implied warranty, and that the express warranty was proven to have been breached to the satisfaction of the court and jury.

The defendant replies in its brief and states that the theory of the plaintiff, in plaintiff's brief, for recovery in the trial court was "entirely on an express warranty" and that this was undoubtedly the theory upon which the case went to the jury and that the defendant feels that the case should be considered solely on this theory on appeal.

It appears that both parties are agreeable that the case be decided only on the theory of an express warranty, and, in the discussion of the question involved, we will consider the case as being based—as suggested by the parties—on an express warranty, which was breached to the damage of the plaintiff.

The plaintiff contends that there are two types of evidence in this case tending to show that the tube of mascara claimed to have caused the injury was purchased from the defendant by the plaintiff upon an express warranty from the defendant that the mascara in question was runproof and harmless, and points to the evidence that from the printed card it tends to show an express warranty of "Runproof-Harmless"; and that further it appears from the testimony of the plaintiff that there was a verbal express warranty, that is to say, the saleslady who sold the plaintiff the mascara told her, in effect, that the tube of mascara would be safe and harmless and fit for use for the purpose for which plaintiff purchased it; and further contends that

the preponderance of the medical evidence and chemical analysis sustains the plaintiff's contention that the mascara was not runproof or harmless, as expressly warranted by the defendant, but was in fact infested with germs dangerous to the human eye; and further contends that the evidence shows that plaintiff lost the sight of her right eye by reason of using the mascara.

The evidence of the defendant seems to controvert the evidence offered by the plaintiff. This being a question of fact, it was for the jury to consider from all the evidence and under the proper instructions of the court the theory of the parties as presented by their instructions to the court.

When we come to consider the law applicable to the facts, in the cases that are called to our attention we find in the case of *MacAndrews & Forbes Co. v. Mechanical Mfg. Co.,* 367 Ill. 288, that the court in its opinion has expressed the views that would apply to this particular case on certain of the questions of law that seem to be controverted. The court in this case, which was a suit by the plaintiff to recover damages because of a breach of an express warranty in the contract that a machine known as the Stutzke Patent Spray Dryer which was to be furnished by the defendant would be fit for the purpose for which it was intended, the plaintiff in its allegations alleging that the machine failed to do the work for which it was intended, in passing upon the facts as appeared in the record, said:

''No particular words or forms of expression are necessary to create an express warranty. A positive assertion of a matter of fact made by the seller at the time of a sale, for the purpose of assuring the buyer of the fact and inducing him to make the purchase, which assertion is relied on by the purchaser, constitutes a warranty. (*VanHorn v. Stautz,* 297 Ill. 530; *Robinson v. Harvey,* 82 id. 58; *Thorne v. McVeagh,* 75 id. 81; *Wheeler v. Reed,* 36 id. 81.) Whether there was an express warranty is to be determined from the intent

of the parties as shown by expressions or words used in the contract and the meaning to be given to them. If the intent was to create a definite contract of warranty as to a certain quality of the article sold, such is an express warranty though the contract may not have used the words 'express warranty' or either of them. The intention of the parties is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true meaning of the parties. (*Geithman v. Eichler,* 265 Ill. 579; *Goodwillie Co. v. Commonwealth Electric Co.* 241 id. 42; *Druecker v. McLaughlin,* 235 id. 367.)''

And when we consider the authorities submitted to this court, we find that in the case of *VanHorn v. Stautz,* 297 Ill. 530, where the court has announced the rule that was adopted by our Supreme Court in the case which we have just quoted, which was an action by the plaintiff to recover from the defendant in an action of assumpsit damage: that occurred by reason of the breach of an express warranty in the sale of hogs by defendant to the plaintiff that the hogs were sound, that the court in the case said:

''Counsel for the defendant in error contend that the question whether what was said by Hollis to the defendant in error prior to and at the time of the sale amounted to a warranty was one of law for the court to decide and not a question of fact to be passed upon by the jury; but the cases cited decide that where the affirmations relied upon to constitute a warranty are oral, it is the province of the jury to determine from all the circumstances whether they amount to an express warranty. It was so decided in the case of *Shippen v. Bowen,* 122 U. S. 576, the court quoting from the opinion of the court of appeals of Maryland in *Osgood v. Lewis,* 2 Harr. & C. 495: 'An affirmation of the quality or condition of the thing sold, not uttered as matter of opinion or belief, made by the seller at the time of sale for the

purpose of assuring the buyer of the truth of the facts affirmed and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty; and in case of oral contracts, on the existence of these necessary ingredients to such a warranty it is the province of the jury to decide, upon considering all the circumstances attending the transaction.' Other authorities were cited to the same effect, including *Hawkins v. Berry, supra.* In *Hobart v. Young,* 63 Vt. 363, it is said: 'In cases of oral contracts it is the province of the jury to decide, in view of all the circumstances attending the transaction, whether such a warranty exists or not. . . .' "

So that, when we consider the facts in this case, as has been stated in this opinion, it would seem that under all the circumstances the facts were questions for the jury to pass upon and determine from these facts whether there was an express warranty as contended for by plaintiff. It appears from the evidence in this record that by the purchase of the mascara from the defendant and its use, the plaintiff was injured so that she has lost the sight of the right eye by its use, and there is evidence that the mascara which was purchased was analyzed by Dr. McNally, who testified that as a result of his analysis he found "an amine and phenolytic aniline base present." He described the test he made and the manner in which he made it and then stated as his conclusion that "toxicologically speaking, it is a poisonous substance." It was necessary for a jury to pass upon all of these questions which were presented, both as to questions relating to the express warranty as well as to the conditions relating to the conditions which were found from an examination of the injured eye after the use of the mascara, and also as to the evidence of the doctors as to what was found in the mascara by analysis.

The subject matter in the instant case is as to whether there is an express warranty which carries with it the

rule that, if the mascara was in a sealed container, the defendant will be considered as a warrantor of the article that was sold to the plaintiff under the express warranty. That means, of course, that the mascara would be sound, wholesome and free from all defects that might injure the plaintiff. It is to be noted that the evidence indicates that there was a card, as well as the container in which the mascara was contained, which indicated that it was runproof as well as harmless; and harmless means, of course, that it would not subject the user to injury.

If we apply the rule that seems to have been approved of by the courts that, where there is an express warranty, this warranty means that the mascara contained in the tube is sound, and fit for use. However, there may be and there is in this case a suggestion that the adoption of such a rule is a harsh one, but, when we come to consider the facts as they appear, it is much safer to hold that the vendor is liable than it would be to compel the purchaser to assume the risk, which would mean, as in this instant case, that the plaintiff is without remedy for the loss of the sight in the right eye.

There are a number of cases in this State where the rule that we have suggested has been adopted. In the case of *Sloan v. F. W. Woolworth Co.*, 193 Ill. App. 620, which was an action for damages for an unwholesome can of herring labeled "Nord Star Brand, fresh fat Herrings in Tomatoes, Strohmery and Art Company, N. Y., net contents five oz. Packed at Stavanger Norway," wherein it was alleged in the first count that defendant sold to plaintiff in violation of its statutory duty a tin of herring, which was corrupt and unwholesome and the flesh thereof diseased, of which fact the plaintiff was ignorant; the second count avers that section 6 of the Pure Food Act of 1907 was violated, and the fifth and sixth counts allege that defendant falsely warranted the herring to be good, sound, healthy and fit for food, and the seventh count charges negligence. The court in that opinion said:

"While that is the rule in some jurisdictions, the courts of Illinois appear to have held the contrary to be the rule in this State. In *Wiedeman v. Keller*, 171 Ill. 93, the opinion states: 'Whether a retail dealer in meats and provisions for consumption is to be regarded as a warrantor that the goods he sells for immediate consumption are sound, wholesome, and free from all defects that may injure the health of the purchaser, or whether the vendor is relieved of responsibility where he has no knowledge of the defective character of the articles sold, and has used reasonable and ordinary care to guard against the selection or purchase of defective or unwholesome articles for sale to his customers . . .' is a question 'not free from difficulty, and one upon which text-writers and courts are not harmonious . . . ' and concludes: 'In an ordinary sale of goods the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased. It may be said that the rule is a harsh one; but, as a general rule, in the sale of provisions the vendor has so many more facilities for ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser, that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk. . . .'"

So, in the instant case, the vendor, by permitting the sale of the article in question with the warranty on the container in which the mascara was enclosed as well as the card that is in evidence containing the same warranty, assumed a responsibility when the mascara was sold to the plaintiff that it was harmless for the use

that it was intended. While it is true that in the case which we have cited, the court held that the liability was on an implied warranty, still, as in this case where the facts are predicated on an express warranty the same rule, in effect, would apply, and we are of the opinion that this assumption of risk was established by the proof in this record, which justified the court in instructing the jury and submitting the case to it for its verdict.

There are several cases that have been called to our attention by the parties upon the question as to whether a vendor or shop keeper is liable for any damages which may result from the sale of an article contained in a can or sealed container, but, in view of the authorities which we have in our State, we believe that they are sufficient for the purpose, and applicable as we have stated them in this opinion.

The defendant complains of an instruction which was given by the court as follows: "The court instructs the jury that the warranty claimed by the plaintiff in this case is the alleged warranty that the mascara in question was 'runproof' and 'harmless'." and further says that the instruction is objectionable in that it might well tend to make the jury believe that the warranty of "runproof" and "harmless" was the warranty of the defendant, and that the main question in the case is whether or not "runproof" and "harmless" is a warranty by the defendant, and this element is ignored by the instruction.

Plaintiff's answer to this contention is that the plaintiff is unable to conceive of any other way in which the court could have instructed the jury on the plaintiff's theory of an express warranty that the mascara was "runproof" and "harmless," and that when the language of the instruction—"claimed by the plaintiff"—and—"alleged"—is noted, it is obvious that the instruction was given in the only proper form in which it could have been given; and further points to the fact that the defendant complains because the court did not

give its instruction which read as follows: "You are instructed that there was no express warranty made by the defendant to the plaintiff in the sale of the tube of Pinaud's Six-Twelve Creamy Mascara in question." It is said by plaintiff that the court might as well have directed a verdict for the defendant as to give this instruction; that by the giving of this instruction the court would have instructed the jury to find that there was no express warranty from the defendant, and the giving of that instruction by the court would have made it impossible for the jury to bring in a verdict of guilty and fix damages for the plaintiff unless it ignored the court's instruction.

However, from the suggestions as we have them, we are of the opinion that the court did not err in giving the instruction for the plaintiff and that the court speaks of the claimed warranty and also as an alleged warranty.

There are several questions which have been called to our attention, and especially that the verdict in favor of the plaintiff is against the manifest weight of the evidence. We have discussed the facts as they appear in the record and from the conclusion which we have reached on these several questions, we believe that they were established and that the verdict which was returned by the jury is not a verdict which is against the manifest weight of the evidence, and we are of the opinion that the judgment entered after the remittitur was agreed upon is not excessive for the injury sustained by the plaintiff.

For the reasons that we have stated in the opinion, the judgment of the trial court should be affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., concurs.

Mr. Justice Burke, dissenting:

Plaintiff grounds her action on an express warranty by defendant that the mascara was runproof and harm-

less.  She had been using "Pinaud's Six-Twelve Creamy Mascara" for 10 or 12 years, and had purchased it from defendant for 8 years.  She had never had any difficulty in applying it before.  The card and the tube show clearly that the mascara is manufactured and put into the tubes by Pinaud.  She knew that the defendant was acting only as a retailer.  She went to the cosmetic section of the store.  There were four different kinds of mascara on the counter, namely, Maybelline, Pinaud's, Chaubin's and Tattoo.  The Pinaud mascara is known as "Six-Twelve Creamy Mascara," which is the trade name.  Plaintiff picked up a card of Pinaud's Mascara, handed it to the sales girl, said she would take it, and handed the sales girl a dime.  The sales girl put it in a paper bag.  She laughed and joked with the sales girl.  She testified that she said to the sales girl, "This Mascara is safe, isn't it," and she (the sales girl) said, "It is on the tube, it says harmless," and plaintiff said, "I will take it," and she bought it.  Defendant points out that the purchase was made before the conversation took place.  Assuming, however, that the conversation and the purchase took place concurrently, the inquiry "This Mascara is safe, isn't it," and the answer of the sales girl, "It is on the tube, it says harmless," does not establish that there was any express warranty by defendant.  In considering that testimony, it should be borne in mind that plaintiff knew the sales girl and had purchased this brand of Mascara regularly for 10 or 12 years.  The statement of the sales girl could only mean a reiteration by her of what was on the tube, and from such statement no inference may be drawn that she intended to warrant, in behalf of defendant, that the contents of the tube were harmless.  Section 12, ch. 121½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 121.16] (Uniform Sales Act) provides that "any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or

promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty." This section requires (1) An affirmation of fact or promise relating to the goods; (2) Made by the seller; (3) With a tendency to induce the buyer to purchase the goods, and (4) If the buyer purchases the goods relying thereon. This mascara is a widely known and advertised brand. The cards are shipped to the retailers in boxes containing one dozen cards. The tubes are prepared by a machine which automatically mixes the mascara, fills and seals the tubes. At no point in this process is the mascara touched by human hands. In 1937, 1,500,000 tubes were sold in various chain stores. It is difficult to understand how the plaintiff can claim that the presence of the words ''Runproof'' and ''Harmless'' on a small card, purporting to be that of the manufacturers, can be considered a warranty by the seller. No customer of a retailer could reasonably believe that the retailer had any connection with those words whatsoever. Undoubtedly, a retailer may make a warranty as to commodities manufactured and put up by others. Such warranty requires some act or acts on the part of the retailer to show an intention to offer his own individual warranty in addition to that of the manufacturer. It is a matter of common knowledge that a large percentage of the merchandise sold in retail stores consists of advertised brands, such as the mascara here in question, which commodities are manufactured and put up in places usually distant from the retail stores where they are sold, and which commodities are undoubtedly purchased from the retail stores on the bases of the advertising campaigns conducted by the manufacturers. As the foundation of this case is an alleged express warranty by defendants, and the uncontradicted evidence does not, as a matter of law,

show an express warranty, it was the duty of the court to enter a judgment for the defendant and against the plaintiffs *non obstante veredicto*.