## COATES & SONS LIMITED *v.* COOK & COMPANY.

Though there may be no difference in appearance or quality between goods sold by sample and the sample itself, yet where there are latent defects in both the goods and the sample, the buyer, unless by the terms of the contract or from the nature of the transaction cut off from so doing, may set up in defense to an action against him for the price of the goods that they are utterly worthless.

Submitted June 3, — Decided July 7, 1897.

Complaint on account. Before Judge Sweat. Appling superior court. September term, 1896.

Suit was brought upon an account for 5,000 needle-cards at three cents each. Two defenses were made: (1) That defendants never purchased 5,000 needle-cards, but did purchase 5,000 needles from plaintiffs, which would have amounted to $15 instead of $150, which smaller amount defendants had, before the suit, tendered to plaintiffs, together with what defendants claimed to be the excess of needles shipped to them beyond their order. (2) That the needles received by defendants from plaintiffs were not reasonably suited to the use intended, but were rotten and worthless, whereby defendants were damaged in their business as retail merchants by loss of

the confidence of their customers in an amount largely exceeding the sum they admitted to be due plaintiffs on account of the needles.

It appears from the evidence, that plaintiffs sent to defendants a sample card of needles together with a circular order-blank, containing full information as to prices, with instructions for ordering, etc.; and that defendants thereupon mailed an order to plaintiffs for 5,000 needle-cards with defendants' business advertisement to be printed thereon. After receiving the order plaintiffs wrote to defendants acknowledging its receipt, this letter showing what plaintiffs understood as to the quantity and specifications of the needles ordered, together with the advertisement to be printed upon the cards; and therein the plaintiffs requested defendants to check this order over carefully and to make any changes or corrections they might desire. Defendants answered this letter, stating that they had checked this matter all over carefully and found it correct in every particular. Thereupon plaintiffs made up the needle-cards with the advertising matter, and shipped them to defendants, who upon receipt of the goods claimed that plaintiffs had made a large mistake, claiming further that defendants had ordered only 5,000 needles and plaintiffs had sent them 5,000 papers. Much correspondence thereupon ensued, from which it appears, that the mistake was made by the defendants in forwarding the order; and that they retained a portion of the needle-cards so received, but shipped back the larger part thereof to plaintiffs, who refused to receive them and returned them to defendants. This correspondence extended over a period of about two months, at the end of which period defendants sent to plaintiffs a check for $9.15 as the amount due, which plaintiffs declined to receive. Nothing appears in any of this correspondence as to the inferiority of the needles. Defendants introduced the testimony of several witnesses, tending to support the second of their defenses as before shown, and to prove that the quality of the needles could not be judged of or determined by inspection or by anything short of their use in actual sewing.

There was a verdict for defendants, and plaintiffs' motion

for a new trial was overruled. The motion alleges, in addition to the general grounds, that the court erred in receiving testimony that the needles were worthless, before defendants had proved that. they differed from those upon the sample-card by which defendants ordered; and in refusing to rule out the evidence as to the quality of the needles, after defendants had closed their case and had not proved that the needles shipped to them by plaintiffs differed from those upon the sample-card.

*G. J. Holton & Son* and *O'Connor & O'Byrne*, for plaintiffs. *E. P. Padgett*, for defendants.

COBB, J.   Where goods are sold by a sample, and the goods delivered are found to correspond with the sample, the buyer is bound to pay for them, even though there be a defect in the goods which would affect their value, provided such defect was in the sample and was patent, or could have been discovered by the exercise of ordinary care.   But where the sample, which is the basis of the sale, is infected with a latent defect which could not be discovered by the exercise of ordinary diligence, the buyer is not bound to pay for the goods, if the defect renders the article entirely worthless, although the goods delivered to him correspond exactly in appearance and quality with the sample.   This is true in every case of sale by a sample, unless the terms of the contract are to the contrary, or from the nature of the transaction the buyer would be estopped from setting up such defense.   The implied warranty of the law, which is set forth in section 3555 of the Civil Code, applies to sales by sample as well as to other sales.   10 Am. & Eng. Encyclo. of Law, p. 167 ; 2 Benjamin on Sales, pp. 851, 873–874. ·

*Judgment affirmed. All the Justices concurring.*