*J. E. McDonald,* for plaintiff.

---

14398.　KISER COMPANY *v.* BRANAN.

Where a defendant who is sued for the balance of the purchase price of goods pleads a total failure of consideration, a general verdict in his behalf will not be authorized unless it be shown that the goods were totally worthless, or data be furnished to the jury by which they may determine the extent to which the consideration has failed, not less than the balance of the purchase price sued for. Applying this ruling to the evidence in this case, the verdict for the defendant was unauthorized.

DECIDED NOVEMBER 27, 1923.

Complaint; from Wilkinson superior court—Judge Park. February 5, 1923.

*Jones, Park & Johnston,* for plaintiff.

BELL, J.  M. C. Kiser Company sued W. H. Branan for $378.80 principal, besides interest, as a balance of the purchase-price of certain shoes which the plaintiff had sold to the defendant on account.  The defendant filed a plea of total failure of consideration.  The entire account originally was $791.05, but payments in the aggregate of $412.25 were credited before the suit was brought.  The shoes were purchased in June and July of 1920.  On December 4, 1920, without notice or previous complaint, the defendant undertook to return to the plaintiff a portion of the shoes, the invoice price of which amounted to $389.00, but the plaintiff rejected them, and one cannot know from the record what ultimately became of them.  They may have been lost to both parties.

A verdict was found for the defendant.  The plaintiff excepted to the overruling of its motion for a new trial.  The sole question is whether there was evidence authorizing the verdict.  This question must be answered by an examination of the testimony of the defendant himself which is given as follows in full:  "I bought 12½ dozen pair of shoes from M. C. Kiser Company on June 1, 1920.  Mr. Diehl was the agent of M. C. Kiser Company who took the order.  The shoes were shipped immediately and received by me a few days later.  When they arrived they were apparently all right and I put them in stock.  I ordered one pair of shoes on July 28th which was shipped promptly.  Pretty soon I began to have these shoes returned to me by my customers, and I had to make a great many pairs good, because they were absolutely worthless.  In some instances the soles pulled loose, and in some instances the soles cracked across the middle.  They were not fit for anybody to wear.  I bought them to sell to retail trade, and they were not fit for that purpose.  (Witness exhibits about eight shoes which were cracked across the soles or pulled loose in various ways.)  These are some of the same shoes.  They were absolutely rotten and I had to make them good.  I can't remember whom these shoes were sold to, except one pair which was returned the next day after they were sold.  Practically all of the shoes I sold were this way.  They were no good to me because I had to make them good to my customers and they were ruining my trade.  On December 1st I shipped seventy-three pairs, worth $389, back to Kiser Company.  They refused to accept them.  I don't know where they are now.  I paid $200 to Kiser Company November 3, and $212.25 on

December 15th. These shoes were not sold by me immediately after I got them, because there wasn't much demand at that time. When I made the first payment in November a few kicks had been made by my customers, but not many. It was fall before the first kick was made. I wrote them a letter October 16, 1920; another letter November 22, 1920; and another letter December 4, 1920. I didn't complain about the quality of the shoes in any of those letters, and in fact didn't complain about the shoes until after December 4th. I didn't know at that time that they were so rotten.

"When Mr. Diehl was here to sell me the shoes, he had a sample to show me of each kind of shoe which I bought. I selected the shoes from these samples and gave him an order on June 1st. So far as I could tell, the sample shoes were all right, and when the shoes arrived they seemed to be all right. They may have been the same shoes as the samples, but they were absolutely no good. I can't say that the shoes I received were any worse than the samples, but I do know that they were not fit for the purpose for which I bought them. Mr. Diehl knew that I was buying them to sell to retail trade. I don't know how many shoes I sold that I had to make good. Practically every pair that I sold was returned. I didn't sell all of the shoes that were shipped and I don't know anything about the shoes that were not returned to me. I still have some of these shoes on hand at my store which were never sold. The shoes which I returned to Kiser Company on December 1st had never been used. They were new shoes and I don't know anything about them except that so many of the others were bad. The shoes which I returned were invoiced to me at $389, and that was the price at which I returned them. Mr. Ward bought four or five pairs of these shoes one fall, and I had to make two of these pairs good. He paid for the others. All of the shoes that I sold him were no good. Etheridge bought two pair in the fall for $8 and I had to make the first pair good. It was only a few days after these shoes were sold before they were returned to me. I don't know how many pairs I had returned, but there were a great many."

One of the defendant's customers then testified to having bought four or five pairs of the Kiser shoes from the defendant in the fall of 1920, and that all of them except the *last pair* were "no

good;" that after a few days wear the soles cracked, and the witness returned them to the defendant, who made two pairs of them good. Another witness testified to having purchased of the defendant two pairs of shoes; that he returned the first pair "because they were no good," and that the defendant gave the witness another pair in place of them. A third witness "bought several pairs of shoes from Mr. Branan in the fall of 1920" which he had to return after a few days use "because they were no good,"—"the soles cracked and pulled loose." The defendant was then recalled and testified further: "The shoes which these witnesses have just testified about were part of this same lot that I ordered from M. C. Kiser Company."

The fact that the defendant returned a quantity of the shoes sufficient at the invoice prices to cover the balance of the account for which the plaintiff sues is wholly immaterial. This is true for two reasons. First, the contracts under which the shoes were sold were entire, and the defendant, having accepted and used a part of the shoes under each, could not reject the remainder. Where a contract for the purchase of goods is entire, the whole contract stands or falls together. In such a case the purchaser cannot accept a part of the goods and reject the remainder. *De-Vaughn's Son* v. *Ohio Pottery Co.,* 12 *Ga. App.* 50 (1) (76 S. E. 593). Second, the sale was executed; the defense was that of a breach of warranty or failure of consideration. A breach of warranty, express or implied, does not annul the sale if executed, but gives the purchaser a right to damages. Civil Code (1910), § 4136; *Pound* v. *Williams,* 119 *Ga.* 904 (1) (47 S. E. 218). But the fact that the defendant may not be entitled to have credit for the goods returned does not deprive him of the right to show, if he can, a breach of a warranty. He may prove a failure of consideration just as though all the goods had been retained. *DeVaughn's Son* v. *Ohio Pottery Co.,* supra.

It appears that the sale was by sample. Upon this point the plaintiff's salesman, consistently with the evidence of the defendant, testified as follows: "I was traveling for M. C. Kiser Company in June and July, 1920. I called on Mr. W. H. Branan at Lewiston, Ga., to sell him some shoes. I had my sample cases with me and exhibited to Mr. Branan samples of every shoe which he bought. He purchased from me some shoes according to the

samples which I had. He gave me an order dated June 1, 1920, for twelve dozen pairs of shoes. This is the order which he gave me dated June 1, 1920. The shoes as listed on that order were entered and shipped according to the samples from which the shoes were ordered."

In *Imperial Portrait Co.* v. *Bryan,* 111 *Ga.* 99 (1) (36 S. E. 291), it was held: "A sale of goods by sample carries an implied warranty that the bulk of the goods purchased will correspond with the sample, but in order to constitute such a sale, something more must appear than that at the time of the sale a sample was exhibited, viz., that when the exhibition was made it was mutually understood and intended that the sample was a reliable representative of the bulk of the goods purchased." Under the evidence we think the transaction would fall within the rule of this case.

It is said in 24 R. C. L. 211, that, "If there be a latent defect in the bulk, and in the sample itself as a part thereof, and this defect is unknown and cannot be discovered by examination, it is the general rule that there is no implied warranty against this defect." See also 35 Cyc. 223. But this does not seem to be the rule in this State. "Where goods are sold by a sample, and the goods delivered are found to correspond with the same, the buyer is bound to pay for them, even though there be a defect in the goods which would affect their value, provided such defect was in the sample and was patent, or could have been discovered by the exercise of ordinary care. But where the sample, which is the basis of the sale, is infected with a latent defect which could not be discovered by the exercise of ordinary diligence, the buyer is not bound to pay for the goods, if the defect renders the article entirely worthless, although the goods delivered to him correspond exactly in appearance and quality with the sample. This is true in every case of sale by a sample, unless the terms of the contract are to the contrary, or from the nature of the transaction the buyer would be estopped from setting up such defense. The implied warranty of the law, which is set forth in . . the Civil Code [Civil Code of 1910, § 4235], applies to sales by sample as well as to other sales. 10 Am. & Eng. Encyc. of Law 167; 2 Benjamin on Sales, 851, 873." *Coates* v. *Cook,* 101 *Ga.* 586, 583 (28 S. E. 982).

If there were defects in the shoes sold to the defendant which could not have been discovered by the exercise of ordinary care, then, in the light of the testimony of the salesman, by which it is virtually said that the bulk and the sample were the same, the inference is not unwarranted that the sample possessed the same defects which it is claimed by the defendant were found in the bulk, that is, the goods purchased. The defendant testified that the sample was apparently all right, and that "when the shoes arrived they seemed to be all right." If the sample was infected with a latent defect which could not be discovered by the exercise of ordinary diligence, the defendant might set up the defense of failure of consideration on account of latent defects in the goods which were delivered to him, although they corresponded exactly in appearance and quality with the sample.

Nevertheless, it is our opinion that the verdict for the defendant was unwarranted, for the reason that it failed to establish that the goods were worthless, and did not furnish to the jury any data by which they could determine with any degree of certainty the extent to which the consideration had failed. In other words, before the defendant can prevail it must appear that the goods were altogether worthless or that the value of the entire quantity purchased has been lessened to the extent of the balance of the account sued for, by reason of the breach of warranty or failure of consideration. The defendant testified: "I don't know how many shoes I sold that I had to make good. Practically every pair that I sold was returned. I didn't sell all of the shoes that were shipped and I don't know anything about the shoes that were not returned to me." He does not show that all the pairs returned were worthless. He further testified: "I still have some of the shoes on hand at my store which were never sold. The shoes which I returned to Kiser Company on December 1st had never been used. They were new shoes and I don't know anything about them except that so many of the others were bad." It is not shown even that all the others were bad, and it is merely inferred that those which were returned would be bad in like proportion. The evidence clearly fails to show that all of the goods purchased were worthless, and the defendant is testifying not with reference to any particular part of the goods but rather in relation to all of those purchased. If it could be definitely ascertained that the failure of considera-

tion as to the entire lot, or any part of it amounted to as much as the balance of the account, the verdict could still be upheld. This, however, is impossible, because the defendant failed to carry the burden resting upon him of showing the amount of the loss and of showing it in such a way "that the jury may calculate the amount from the figures furnished, and will not be placed in the position where their allowance of any sum would be mere guesswork." *National Refrigerator Co.* v. *Parmalee,* 9 *Ga. App.* 725 (1), 726 (72 S. E. 191); *Coffee* v. *Worsham,* 31 *Ga. App.* 62 (119 S. E. 665).

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*